**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

ROBERT F. KENNEDY HUMAN RIGHTS;
NATIONAL IMMIGRATION PROJECT;
and AMERICAN CIVIL LIBERTIES
UNION OF LOUISIANA;

                *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED
STATES CUSTOMS AND BORDER
PROTECTION; UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY OFFICE FOR CIVIL RIGHTS
AND CIVIL LIBERTIES, and OFFICE OF
THE INSPECTOR GENERAL, U.S.
DEPARTMENT OF HOMELAND
SECURITY;

                *Defendants*.

Case No. 25-cv-4349

---

## COMPLAINT

1. Plaintiffs—not-for-profit organizations that advocate on behalf of immigrants, including unaccompanied children—bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive, declaratory, and other appropriate relief regarding agency records related to practices and procedures used by the Department of Homeland Security (DHS) and its component agencies to determine whether individuals held in its custody are minors, statutorily entitled to specific protections and conditions of confinement because they are children.

2.     Plaintiffs Robert F. Kennedy Human Rights ("RFKHR"), National Immigration Project ("NIP") and American Civil Liberties Union of Louisiana ("ACLU-LA") (together, "Plaintiffs"), are immigrants' rights organizations that work closely with people detained by DHS, including unaccompanied minor children.

3.     Unaccompanied immigrants who are younger than 18 years old enjoy certain legal protections by virtue of the fact that they are children. By statute, unaccompanied immigrant children are the responsibility of the Department of Health and Human Services (HHS) (not DHS) and must be placed in the least restrictive setting that is in the best interest of the child. Trafficking Victims Protection Reauthorization Act (TVPRA), 8 U.S.C. §§ 1232(b), (c)(2)(A). These children may not be held in a secure facility absent a determination that they pose a danger to themselves or others, or a charge of criminal conduct. *Id.* HHS, through its sub-agency, the Office of Refugee Resettlement (ORR), ensures that unaccompanied immigrant children under its custody or care receive "classroom education, mental health and medical health services, case management, and socialization and recreation."[1]

4.     The TVPRA provides added procedural protections for unaccompanied children. It exempts them from expedited removal, a summary administrative process whereby an immigration enforcement officer can order removal without a hearing. 8 U.S.C. § 1225(b)(1)(A)(i). Instead, DHS must place unaccompanied children in full removal proceedings before an immigration judge where they can present any and all claims for relief from removal and ensure that they have legal counsel to the greatest extent practicable. 8 U.S.C. §§ 1232(a)(5)(D), (c)(5).

---

[1]   Congressional Research Service, *Unaccompanied Alien Children: An Overview*, at 11, available at https://crsreports.congress.gov/product/pdf/R/R43599.

5.     The TVPRA also requires DHS to develop procedures for determining whether an individual in its custody is a minor, which "[a]t a minimum . . . shall take into account multiple forms of evidence, including the non-exclusive use of radiographs" to determine the age of any non-citizen in its custody where there is a claim or suspicion that the person is under the age of 18. *Id.* § 1232(b)(4).

6.     Plaintiffs have represented, witnessed, and are aware of immigrant children subject to adult detention by U.S. Immigration and Customs Enforcement (ICE) based on age determinations that violate these mandated procedures, including through improper reliance on radiographs, destruction of critical documents, and coercion of false statements by DHS employees.

7.     Additionally, the Office for Civil Rights and Civil Liberties (CRCL)—the entity statutorily charged, among other responsibilities, with receiving and investigating complaints of abuse by DHS employees and providing detailed reports concerning such complaints and investigations to Congress and the public—has investigated and reported to Congress its concerns with ICE age determination procedures,[2] and has received more than 100 complaints that U.S. Customs and Border Patrol (CBP) officers violated the rights of unaccompanied children when determining their ages.[3]

8.     On January 27, 2025, Plaintiffs submitted a FOIA request (the "Request") to DHS, ICE, CRCL, CBP and the Office of the Inspector General for the U.S. Department of

---

[2]   CRCL, Fiscal Year 2022 Annual Report to Congress 58 (Nov. 17, 2023), available at https://www.dhs.gov/sites/default/files/2023-12/23_1117_crcl_fy22-annual-report-508.pdf

[3]   Memorandum from Cameron P. Quinn, Officer, Office for Civil Rights and Civil Liberties, to Mark A. Morgan, Acting Commissioner, U.S. Customs and Border Patrol, et. al. (May 11, 2020) ("Retention Memo"), formerly available at https://www.dhs.gov/sites/default/files/publications/retention-memo-cbp-age-determination-birthcertificateverification-05-11-20.pdf.  (Exh. 1).

Homeland Security (OIG) seeking records related to the current age determination procedures used by DHS and its component agencies, and the federal government's related policies, directives, actions, reports and recommendations, among other topics. (Exh. 2).

9.    Plaintiffs submitted the Request to facilitate their representation of, and public advocacy for, individuals in detention at ICE facilities, specifically minors wrongly detained in ICE custody (rather than placed under the care of HHS), because they were subjected to improper age determination procedures. *Id.*

10.    Plaintiffs requested expedited processing of the Request under 5 U.S.C. § 552(a)(6)(E) and applicable agency regulations, citing an imminent threat to the life or physical safety of minors wrongly detained in adult immigration facilities and an urgent need to inform the public of the federal government's activity in this regard. *Id.*

11.    By email dated January 28, 2025, CBP indicated that it had "determined that the records [sought in the Request] are not under the purview" of the CBP, and recommended that the Request be redirected to CRCL. (Exh. 4). In a pair of emails, both dated February 5, 2025, ICE acknowledged receipt, denied expedited processing, and conveyed that it had referred the Request to CRCL for processing. (Exh. 5; Exh. 6). Neither CRCL, nor the other Defendants (DHS and OIG) have acknowledged receipt or responded to the Request.

12.    Indeed, far from meeting its statutory obligation to provide important information in response to Plaintiffs' FOIA request, in or around February 2025, DHS removed most of the CRCL investigative records previously posted on a transparency library maintained by CRCL,[4] pulling back previously available information relevant to that Request. Additionally, on or

---

[4] Nick Schwellenbach, *DHS Removed 100+ Civil Rights and Civil Liberties Records*, Project on Gov't Accountability (Apr. 21, 2025), https://perma.cc/NWP7-SBD3.

around March 21, 2025, DHS disbanded CRCL, placing almost all of its employees, including, upon information and belief, those responsible for responding to FOIA requests.

13.    Despite imminent and irreparable harm to children wrongly detained as adults, and strong public interest in the issues underlying the Request, in the more than three months since the Request was filed, Defendants have not provided Plaintiffs with *any* responsive records, in clear violation of their obligations under FOIA. 5 U.S.C. § 552(a)(3)(A).

14.    Defendants' refusal to expedite the Request is contrary to the statutory requirement that a FOIA request must be expedited where a delay "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or where the request is "made by a person primarily engaged in disseminating information" and urgency exists to inform the public concerning actual or alleged government activity. *Id.* §§ 552(a)(6)(E)(v)(I)–(II).

15.    While Defendants improperly delay production of the requested records, unaccompanied children are being wrongly detained in ICE facilities, thrown in with the adult population, and denied appropriate education, recreation, socialization and mental and physical healthcare, as the result of procedurally defective and substantively incorrect age determinations. These children are at grave physical risk because they are not being segregated from adults held at the same facilities and are not having their physical and mental health needs met. They are also losing vital education, socialization, and recreational opportunities in their formative years. DHS's treatment of these vulnerable children as adults is causing them irreparable harm.

16.    The information sought in the Request concerning how DHS and its component agencies make age determinations, and the federal government's related policies, directives, actions, reports and recommendations, is urgently needed to redress existing harm and prevent continuing and future injury. Moreover, Defendants' refusal to comply with FOIA and provide

the records covered by the Request is directly impeding the public's need to know about the federal government's activities with respect to age determinations for and improper treatment of young migrants.

17. Plaintiffs accordingly file this Complaint to obtain prompt judicial intervention to order Defendants to comply expeditiously with their obligations under FOIA.

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2) and the authority to issue declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has personal jurisdiction over the parties.

19. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because Plaintiff RFKHR maintains its principal places of business in this district.

## PARTIES

20. Plaintiff RFKHR is a non-partisan, not-for-profit organization that promotes human rights through public education, information campaigns, and advocacy. It engages in strategic story telling by building narratives to bring about reform through public education, transparency, and litigation where necessary. A substantial focus of its public education work is devoted to the promotion of immigrants' rights and the harms of immigration detention. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the public through its website, media, and information campaigns are critical and substantial components of RFKHR's work. RFKHR regularly publishes in-depth analyses of current events affecting human rights and broadly disseminates information to expose and rectify injustice. RFKHR disseminates content through its website, https://rfkhumanrights.org/, other websites like https://endthepainongain.org that host its human rights reports. It also issues press releases and public statements that reach thousands. Access to

current information about DHS practices is critical to those functions. Additionally, RFKHR has represented an immigrant under the age of 18 who was detained in adult immigration detention facilities in violation of the TVPRA.

21.   NIP is a national, nonprofit organization dedicated to providing legal assistance and support to immigrant communities and advocating on behalf of noncitizens. NIP is primarily engaged in disseminating information to the public. It is the author of four treatises on immigration law published by Thomson Reuters. In addition to publishing practice advisories and community resources on immigration law topics disseminated to its members and a large public audience through its website, www.nipnlg.org, NIP provides technical and litigation assistance, participates in impact litigation, advocates for fair and just policies and legislation, and provides regular legal training to the bar and the bench. Access to current information about DHS practices is critical to those functions.

22.   Plaintiff ACLU-LA is a not-for-profit organization that works to advance and preserve the individual rights and liberties guaranteed by the Constitution and laws of the United States and the State of Louisiana, including the rights of prisoners and immigrants. ACLU-LA regularly visits the immigration detention facilities that are within ICE's New Orleans Field Office Area of Responsibility (AOR). ACLU-LA is committed to principles of transparency and accountability in government and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and to the public are critical and substantial components of the ACLU-LA's work. ACLU-LA regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other civil liberties-related current events. ACLU-LA

also publishes "know your rights" materials designed to educate the public about immigrants' rights. ACLU-LA disseminates content through its website, https://www.laaclu.org/, and quarterly newsletters, which are sent to thousands of subscribers. Access to current information about DHS practices is critical to those functions.

23.    Defendant DHS is a department of the Executive Branch of the United States, headquartered in Washington, D.C., charged with overseeing, among other areas, immigration enforcement and detention and border security. It exercises supervisory control over ICE, CRCL, CBP and the OIG. DHS has possession, custody, and control of all the records Plaintiffs seek in this action.

24.    Defendant CBP is a component of DHS responsible for regulating international trade and enforcing U.S. trade, customs and immigration regulations.

25.    Defendant ICE is a component of DHS that enforces immigration and customs laws and is responsible for detention of adult immigrants and removal of immigrants.

26.    Defendant CRCL was established as an office within the DHS charged by statute with receiving and investigating complaints of civil rights and civil liberties abuses by DHS, conducting public outreach so that people are aware of their ability to file complaints, and annually submitting reports to Congress on the complaints it receives. As of March 21, 2025, DHS has placed almost all of CRCL's employees on administrative leave, effectively shuttering this critical oversight body.

27.    Defendant OIG is charged with conducting independent and objective investigations and audits of DHS programs and operations and keeping the Secretary of Homeland Security and Congress informed about problems and deficiencies in DHS operations and the need for corrective action.

28.     Defendants DHS, CPB, ICE, CRCL and OIG are all federal agencies within the meaning of FOIA. 5 U.S.C. § 552(f)(1).

## FOIA STATUTORY FRAMEWORK

29.     FOIA requires federal agencies, upon request by a member of the public, to promptly release records within the possession of the agency, unless a statutory exception applies. *Id.* §§ 552(a)–(b).

30.     Within 20 working days after receipt of a FOIA request, an agency must determine "whether to comply" with the request. *Id.* § 552(a)(6)(A)(i). The agency must "immediately notify" the requester of "such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i)(I).

31.     If an agency cannot meet the 20-day statutory time limit for processing a request because of "unusual circumstances," the agency may unilaterally extend the deadline by 10 days. *Id.* §§ 552(a)(6)(B)(i), (a)(4)(A)(viii)(II)(aa) ("If an agency has determined that unusual circumstances apply," then a failure to comply with the statutory time limit "is excused for an additional 10 days."). "Unusual circumstances" exist if it is "reasonably necessary to the proper processing of the particular requests" "to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request." *Id.* § 552(a)(6)(B)(iii)(II).

32.     If the agency fails to respond within the statutory time limit, the requester is deemed to have exhausted its administrative remedies and may immediately seek judicial recourse to compel the agency's response to the FOIA request. *Id.* §§ 552(a)(6)(C)(i), (a)(4)(B).

33.     FOIA and applicable agency regulations also require expedited processing for any FOIA request where a delay "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or where the requester is "primarily engaged in disseminating

information" and it is urgent "to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(i), (v); *see also* 6 C.F.R. § 5.5(e)(l)(i)–(ii). An agency is statutorily required to respond to a request for expedited processing within 10 days of the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I); *see also* 6 C.F.R. § 5.5(e)(4).

34.    Finally, FOIA also provides that this Court may assess attorneys' fees and litigation costs against the United States if Plaintiffs prevail in this action. 5 U.S.C. § 552(a)(4)(E).

## RELEVANT FACTS

### Defendant's Improper Age Determination Practices are Resulting in Immigrant Children Being Illegally Detained in Adult ICE Facilities

### Legal Protections for Unaccompanied Immigrant Children

35.    The TVPRA ensures that unaccompanied immigrant children in federal custody receive age-appropriate care and treatment because they are vulnerable. Specifically, the TVRPA requires DHS to promptly identify any unaccompanied immigrant that claims or is suspected to be under 18 years old, and to transfer that young person to the care and custody of the U.S. Department of Health and Human Services (HHS). 8 U.S.C. § 1232(b)(2)(B)–(b)(3).

36.    Once in HHS custody, unaccompanied children must be "promptly placed in the least restrictive setting that is in the best interest of the child," *Id.* § 1232(c)(2)(A), and the HHS sub-agency Office of Refugee Resettlement (ORR) then provides them with "classroom education, mental health and medical health services, case management and socialization and recreation."[5]

---

[5]    Congressional Research Service, *Unaccompanied Alien Children: An Overview*, at 11, available at https://crsreports.congress.gov/product/pdf/R/R43599.

37.    The TVPRA also ensures that children have access to fair procedures to determine asylum eligibility by requiring DHS to ensure that they have legal representation to the greatest extent practicable and that they are placed in full removal proceedings before an immigration judge, where they can present any and all claims for relief from removal. 8 U.S.C. § 1232(a)(5)(D).

38.    To ensure that noncitizen children receive TVPRA protections, the TVPRA also prescribes how DHS must make age determinations when an individual in its custody claims or is suspected to be under 18 years old. The statute directs HHS, in "consultation" with DHS, to "develop procedures to make a prompt determination of the age of a [noncitizen], which shall be used by [DHS] and [HHS] for children in their respective custody." *Id.* § 1232(b)(4). "At a minimum, these procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied [noncitizen]." *Id.*

39.    The resulting procedures are contained in Section 1.6 of the ORR Unaccompanied Children Program Policy Guide ("ORR Policy Guide"),[6] and the "UC [Unaccompanied Child] Manual of Procedures: for ORR Staff, Contractors, and Grantees," ("UC Manual"), at 71.[7] The UC Manual requires that age determinations "be conducted in a holistic, research based, safe, child and gender-sensitive, and fair manner, avoiding any risk of violation of the physical integrity of the individual; giving due respect to human dignity." *Id.* at 72.

40.    Where an unaccompanied immigrant who claims or is suspected to be a child is also claiming asylum from his or her country of origin, officials are forbidden from contacting

---

[6]    Available at https://www.acf.hhs.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-1#1.6.

[7]    Available at https://immigrationlitigation.org/wp-content/uploads/2023/12/Section-1-Placement-in-ORR-Care-Provider-Facilities.pdf.

that country's consulate to obtain or verify the child's birth certificate. *Id.* at 74–75. Instead, the UC Manual instructs officials to "gather[] information from as many sources as possible," including interviews with the child and the child's family or associates and information from the "[s]chool and/or church, mosque, or other religious institution the [child] attends[.]" *Id.*; *see also* ORR Policy Guide 1.6.0. & 1.6.2.

41.    The UC Manual permits medical forensics only "as a last resort, after all available evidence from government-issued documents, other documents which may indicate age (e.g., school records, medical records, and social media), and statements and interviews from family members and associates of the [child] are exhausted." UC Manual at 76; *see also* ORR Policy Guide 1.6.2. If medical forensics must be consulted, "only dental forensics can be used." Skeletal forensics are forbidden. UC Manual at 76–77; *see also* ORR Policy Guide 1.6.2.

42.    ICE requires its officials to make age determinations "consistent with" HHS's age determination policy. ICE Directive Technical and Procedural Update, Age Determination Procedures for Custody Determination ("ICE Policy"), Policy No. ERO 11301.4, at 1 (Dec. 11, 2015). (Exh. 3). Under the controlling ICE Policy, medical age assessment techniques should be used only "as a last resort." *Id.* § 5.1(4). Bone scans must take into account "the individual's ethnic and genetic background," recognizing that "no medical assessment can determine an exact age." *Id.* § 5.1(4)(a)–(b).

43.    ICE policy also requires the examining doctor to submit a report assessing the probability that the individual is an adult. An individual can be processed as an adult only if the probability is 75 percent or greater can he or she is over the age of 18. *Id.* § 5.3.

44.    ICE policy limiting reliance on radiographs reflects and incorporates concerns from the medical and dental communities that bone and dental scans are unreliable determinants

of age.[8] Civil rights groups also have challenged the disproportionate and racially discriminatory use of radiographs to determine age on young immigrants from Africa and South Asia, and charged that the radiographic analysis used to make age determinations is based on improper and unethical race-based science. *See, e.g.*, Compl. for Declaratory and Injunctive Relief, *Florence Immigrant and Refugee Rights Project et al. v. U.S. Dep't of Health and Human Services*, No. 24-cv-6740 (S.D.N.Y. Sept. 5, 2024).

**ICE Routinely Violates the TVPRA and its own Policies in Making Age Determinations**

45.    Notwithstanding the requirement that ICE make age determinations based on an evidence-based, wholistic approach that relies on radiographs only as a last resort, ICE frequently relies on radiographs as the exclusive basis for its age determinations, disregarding, and in some instances even destroying, other more reliable indicators of age. Worse yet, CBP officers have coerced young immigrants into making false statements that they are older than they actually are, in order to support erroneous determinations that unaccompanied children are adults.[9]

---

8    *See, e.g.*, Claire Corkish & Yareliz Diaz, *It's Unethical to Use Dental X-Rays to Send Immigrant Children to Adult Detention Facilities*, BU School of Public Health (July 3, 2019), https://www.bu.edu/sph/news/articles/2019/its-unethical-to-use-dental-x-rays-to-send-immigrant-children-to-adult-detention-facilities/); Brittny Mejia & Kate Morrissey, *U.S. Is Using Unreliable Dental Exams to Hold Teen Migrants in Adult Detention*, LA Times (Jun. 2, 2019), https://www.latimes.com/local/lanow/la-me-ln-immigrant-age-migrants-ice-dental-teeth-bangladesh-20190602-story.html; *see also* DHS OIG, *Age Determination Practices for Unaccompanied Children in ICE Custody*, at 1 (Nov. 10, 2009), available at https://tracreports.org/tracker/dynadata/2010_01/OIG_10-12_Nov09.pdf (noting that use of radiographs to determine age "has been criticized by some in the medical and advocacy communities as unreliable").

9    *See* Retention Memo, formerly available at https://www.dhs.gov/sites/default/files/publications/retention-memo-cbp-age-determination-birthcertificateverification-05-11-20.pdf. (Exh. 1). The results of that investigation have not been publicly released and are among the records sought by the Request.

46.    As just one example, RFKHR represented an individual (I.J.) who arrived at the U.S. border requesting asylum as an unaccompanied 16-year-old after being separated from his guardian while traveling. *See* Compl. for Declaratory and Injunctive Relief, *I.J. v. Harper*, No.2:24-cv-00327 (E.D. La. Feb 6, 2024). Despite a birth certificate and soccer identification indicating that he was only 16, he was aggressively confronted by CBP officers who accused him of lying, declared that his identification was fake and that his soccer card would be thrown in the trash, and threatened to jail him if he did not admit to being over 18. *Id.*at 11. Terrified, I.J. signed a document CBP presented to him inaccurately stating that he was 18, based upon which he was detained in an adult ICE facility. *Id.* When I.J subsequently recanted his false admission that he was 18, ICE subjected him to an unreliable bone scan, which yielded an incorrect report that he had "full bone maturation" and that his "skeletal development" indicated that he was 19. *Id.*at 13. ICE persistently disregarded multiple forms of documentation establishing that I.J. was a minor. *Id.* at 11-18. As a result of ICE's illegal and improper age determination procedures, I.J. was wrongly detained for months in an adult male facility. *Id.* at 12, 15.

47.    I.J.'s experience was not an isolated occurrence. Between 2015 to 2020, CRCL received more than 100 complaints of age determination abuses by CBP officers, including destruction of birth certificates, coerced false confessions from unaccompanied children that they are over the age of 18, and falsifying age records. Based on these numerous credible complaints, CRCL opened a broad investigation into CBP age determination practices.[10] Additionally, in its 2022 Annual Report, CRCL reported that it had "investigated several complaints alleging that ICE improperly determined the ages of individuals in detention facilities who purported to be

---

[10]    *See* Retention Memo, formerly available at
https://www.dhs.gov/sites/default/files/publications/retention-memo-cbp-age-determination-birthcertificateverification-05-11-20.pdf. (Exh. 1)

minor" and that it had identified "concerns with ICE's age determination procedures."[11] In that Annual Report, CRCL noted that it had sent a Recommendation Memo to ICE in July of 2021, in response to which ICE, in February 2022, "agreed to provide training about its age determination procedures to relevant ICE personnel and to update its age determination policies and procedures with a clarification about verifying age claims and a reminder about using medical assessments as a last resort." *Id.* Notably, I.J, was subjected to improper age determination procedures *after* ICE made this commitment to update and provide additional training on age determination.

### Plaintiffs' FOIA Request

48.    On January 27, 2025, Plaintiffs submitted a FOIA request to DHS, ICE, CPB, CRCL and DHSIG seeking records related to age determination policies and practices employed by DHS (including its component agencies). (Exh. 2). Specifically, the Request sought (1) records concerning CRCL's investigations into DHS age determination and birth certificate verification procedures, including (a) all complaints about DHS age determination and birth certificate verification; (b) all communications between CRCL and DHS regarding instances of age determination; (c) all records created in response to age determination complaints filed with CRCL; (d) all expert reports, opinions or other materials relied on by CRCL in issuing guidance, training materials and policies to DHS or in investigating age determination complaints; (e) a copy of the July 2021 Recommendation Memo sent to ICE, referenced in the CRCL 2022 Annual Report; (f) copies of all complaints regarding age determination referenced in the CRCL 2022 Annual Report; (g) any CRCL retention memo issued related to the age determination investigation reference in the CRCL 2022 Annual Report; (h) a copy of the February 2022 ICE

---

[11]    U.S. Dep't of Homeland Sec., Office of Civil Rights and Civil Liberties, 2022 Annual Report to Congress (Nov. 17, 2023) at 58, available at https://www.dhs.gov/sites/default/files/2023-12/23_1117_crcl_fy22-annual-report-508.pdf.

response referenced in the CRCL 2022 Annual Report; (i) Any ICE training materials on age determination, including but not limited to materials used to train line officers and policy memos used to give agency-wide instructions to line officers, both those in existence during the investigation referenced in the CRCL annual report and those created as updates, changes or clarifications to the procedures following the Recommendation Memo referenced in the CRCL 2022 Annual Report; (2) a copy of the most current version of DHS "Age Determinations for Custody Procedures TPU;" (3) a copy of the most current version of the ICE, Enforcement and Removal Operations, Juvenile and Family Residential Management Unit Field Office Juvenile Coordinator Handbook; and (4) all Communications to and from DHS, ICE, and CBP personnel pertaining to age determinations or age decisions for individuals including the use of radiographs in age determinations. *Id.*

49.    Plaintiffs filed the Request to assist with the representation of their clients and with the intent to widely disseminate the requested information to the public at no cost.

50.    Plaintiffs sought expedited processing for the Request on two independent grounds.

51.    First, Plaintiffs demonstrated in the Request that a lack of expedited disclosure of the records could "reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I); *see also* 6 C.F.R. § 5.5(e)(l)(i).

52.    Second, Plaintiffs demonstrated that they are primarily engaged in disseminating information and there exists a clear "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(l)(ii).

53.    On January 28, 2025, CBP sent an email asserting (implausibly) that it had determined that the documents sought by the Request were not within its "purview" and recommended that Plaintiffs direct their Request to CRCL. (Exh. 4).

54.    On February 5, 2025, ICE acknowledged receipt of the Request, informed Plaintiffs that the agency intended to invoke a 10-day extension of the statutory 20-day time limit to respond pursuant to 5 U.S.C. § 552(a)(6)(B), and denied Plaintiffs' request for expedited processing. (Exh. 5). Also on February 5, by separate email, ICE informed plaintiffs that it had referred the Request to CRCL. (Exh. 6).

55.    In denying Plaintiffs' request for expedited processing, ICE took the position that Plaintiffs did not qualify for either category under 6 C.F.R. § 5.5(e)(1). It asserted that Plaintiffs "failed to demonstrate a particular urgency to inform the public about the government activity involved . . . beyond the public's right to know about government activity generally" and that Plaintiffs' request for expedited processing was "conclusory in nature." (Exh. 5).

56.    DHS, CRCL and OIG have not acknowledged receipt of the Request.

**Defendants' Failure to Respond to Plaintiffs' FOIA Requests**

57.    Even without expedited processing (and even assuming all Defendants had properly invoked the 10-day extension, which they did not), Defendants' responses to the Request were due by March 10, 2025, 30 business days (the default 20-day statutory time limit plus the 10-day extension invoked by ICE in its February 5, 2025 e-mail) after receiving the Request. 5 U.S.C. §§ 552(a)(6)(A), (a)(6)(B), (a)(4)(A)(viii)(II)(aa). None of the Defendants has provided any update to Plaintiffs on the status of their Request.

**Defendants' Troubling Recent Actions to Impede Oversight of their Age Determination Practices and Obscure Relevant Information from the Public**

58.    Not only have Defendants failed to provide any records covered by Plaintiffs' FOIA Request, they have recently taken a series of actions designed to evade critical oversight and hide their improper treatment of young immigrants. Specifically, on March 21, 2025, DHS abruptly closed CRCL (along with two other DHS oversight bodies—the U.S. Citizenship and Immigration Services Ombudsman Office and the Office of the Immigration Detention Ombudsman), placing nearly all employees on leave (with separation dates of May 23, 2025), and ordering them to cease all work, including work on pending investigations. Thus, the DHS component that both ICE and CBP indicated would handle the Request no longer exists.

59.    Additionally, Defendants have taken down important information previously available on the DHS website, related to CRCL's investigations of improper age determination practices, including the Retention Memo sent by CRCL to CBP discussing the nature of the more than 100 complaints it had received regarding age determination abuses.[12]

**Exhaustion of Administrative Remedies**

60.    Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), because Defendants failed to respond to Plaintiffs' Request by the statutory deadline under 5 U.S.C. § 552(a)(6)(A)(i), Plaintiffs are deemed to have exhausted their administrative remedies and may seek judicial recourse pursuant to 5 U.S.C. § 552(a)(4)(B).

---

[12] Nick Schwellenbach, *DHS Removed 100+ Civil Rights and Civil Liberties Records*, Project on Gov't Accountability (Apr. 21, 2025), https://perma.cc/NWP7-SBD3.

## CAUSES OF ACTION

### Count I
### (against all Defendants)

**Violation of FOIA, 5 U.S.C. § 552(a)(3)(A), for Failure to Make Timely Available the Records Sought by Plaintiffs' Requests**

61.    Plaintiffs hereby incorporate by reference all facts and allegations above as if fully set forth herein.

62.    Plaintiffs properly requested records within the possession, control, and custody of Defendants.

63.    Defendants' failure to timely make available the records sought by Plaintiffs' Request violates FOIA. 5 U.S.C. § 552(a)(3)(A).

### Count II
### (against HHS, CBP, CRCL and OIG)

**Violation of FOIA, 5 U.S.C. § 552(a)(6)(E), for Unreasonable Failure to Grant Plaintiffs' Request for Expedited Processing**

64.    Plaintiffs hereby incorporate by reference all facts and allegations above as if fully set forth herein.

65.    Defendants were statutorily required to expedite processing of Plaintiffs' Request because Plaintiffs demonstrated that: (i) "a failure to obtain [the] requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual"; and (ii) Plaintiffs are "primarily engaged in disseminating information" and as a matter of urgency need "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. §§ 552(a)(6)(E)(i)(I), 552(a)(6)(E)(v)(I)–(II). Although the harm to unaccompanied children wrongly determined to be adults due to improper age determination procedures is severe and irreparable, the damage from continued application of those procedures is ongoing. Children continue to be wrongly held in adult facilities, denied

education, recreation, socialization and mental and physical health care to which they are entitled under the law, and which are all vital to their development and wellbeing.  Every day a child is wrongly held in adult detention imminently threatens their safety.  The information sought in the Request is urgently needed to redress existing improper and incorrect age determinations and to prevent additional children from improper and harmful age determination by DHS agencies. Additionally, plaintiffs RFKHR and NIP are both primarily engaged in disseminating information and there is enormous public interest in the federal government's current immigration detention practices, and the public has an urgent need to know how DHS and its component agencies are illegally and incorrectly making age determinations that result in vulnerable children being detained in adult facilities and denied statutory protections.

66.    Defendants' failure to grant Plaintiffs' request for expedited processing therefore violates FOIA. 5 U.S.C. § 552(a)(6)(E).

## Count III
## (against all defendants)

**Violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), for Failure to Timely Respond to Plaintiffs' Requests with Required "Determinations"**

67.    Plaintiffs hereby incorporate by reference all facts and allegations above as if fully set forth herein.

68.    Plaintiffs properly requested records within the possession, control, and custody of Defendants. 5 U.S.C. § 552(a)(1)(A); 6 C.F.R. § 5.3.

69.    Defendants' failure to timely respond to Plaintiffs' Request with required determinations violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and DHS's corresponding regulations promulgated thereunder, 6 C.F.R. § 5.6(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a) Declare that Defendants have violated FOIA by failing to provide Plaintiffs with all non-exempt records responsive to Plaintiffs' Request;

b) Declare that Defendants have violated FOIA by failing to timely respond to Plaintiffs' Request with the required determinations regarding the Request;

c) Declare that Plaintiffs are entitled to disclosure of the requested records;

d) Direct by injunction that Defendants perform adequate searches for records responsive to Plaintiffs' Request and provide Plaintiffs with all records responsive to Plaintiffs' Request that are not specifically exempted from disclosure under FOIA no later than 20 days after this Court issues an order granting Plaintiffs relief;

e) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiffs' Request;

f) Enjoin Defendants from charging Plaintiffs fees for the search, review, duplication and processing of Plaintiffs' Request;

g) Retain jurisdiction over this action to ensure that no agency records are wrongfully withheld, including, if necessary, judicial review of any claim by Defendants that requested information is exempt from disclosure;

h) Award Plaintiffs the costs of litigation, including any reasonable attorneys' fees incurred in this action, as provided by 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C.§ 2412(d)(1)(A); and

i) Grant any other relief that the Court deems just and proper.


Dated: May 22, 2025                    Respectfully submitted,
New York, NY

                                       */s/ Anthony Enriquez*
                                       Anthony Enriquez (Bar No 5211404)
                                       ROBERT F. KENNEDY HUMAN RIGHTS
                                       88 Pine Street, 8th Floor, Suite 801
                                       New York, New York 10005
                                       Tel.: (646) 289-5593
                                       E: enriquez@rfkhumanrights.org

Sarah E. Decker (Bar No. 5850763)
ROBERT F. KENNEDY HUMAN RIGHTS
1300 19th Street NW, Suite 750
Washington, DC 20036
Tel.: (646) 289-5593
E: decker@rfkhumanrights.org

Sarah T. Gillman (Bar No #SG 9273)
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine Street, 8th Floor, Suite 801
New York, New York 10005
Tel.: (646) 289-5593
E: gillman@rfkhumanrights.org

Nora Ahmed (Bar No. 5092374)
AMERICAN CIVIL LIBERTIES UNION OF
LOUISIANA
1340 Poydras Street, Suite 2160
New Orleans, LA 70112
Tel: (504) 522-0628
E: nahmed@laaclu.org

*Counsel for Plaintiffs*