*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528



May 11, 2020

MEMORANDUM FOR:      Mark A. Morgan
                     Acting Commissioner
                     U.S. Customs and Border Protection

                     Scott K. Falk
                     Chief Counsel
                     U.S. Customs and Border Protection
                                    (b)(6)
FROM:                Cameron P. Quinn
                     Officer
                     Office for Civil Rights and Civil Liberties
                     (b)(6)

                     Attorney Advisor, Legal Counsel Division
                     Office of the General Counsel

SUBJECT:             Age Determination and Birth Certificate Verification Procedures
                     Complaint Nos. 15-12-CBP-0726, 15-12-CBP-0727,
                     16-03-CBP-0116, 16-04-CBP-0124, 16-04-CBP-0128,
                     16-05-CBP-0176, 16-01-CBP-0338, 16-09-DHS-0430,
                     17-02-CBP-0023, 17-01-CBP-0024, 17-01-CBP-0025,
                     17-05-CBP-0230, 17-08-CBP-0303, 18-08-CBP-0281,
                     18-10-DHS-0515, 18-10-DHS-0509, 19-03-CBP-0166,
                     and 19-07-CBP-0301

Over the last five years, the U.S. Department of Homeland Security, Office for Civil Rights and Civil Liberties (CRCL) has received over 100 allegations that U.S. Customs and Border Protection (CBP) violated the civil rights and civil liberties of unaccompanied alien children (UAC) when determining their ages or verifying the authenticity of their birth certificates. These allegations arise from reported incidents at both U.S. Border Patrol (USBP) stations and Office of Field Operations (OFO) ports of entry. These include similar allegations, such as CBP discarding and destroying birth certificates, pressuring and coercing UAC into incorrectly claiming they are adults, and falsifying records of UAC's ages.

From these numerous allegations, CRCL has chosen a sample of 18 that represent the various types of allegations received by CRCL and has opened them as complaint investigations. CRCL has summarized each of the 18 complaints below. CRCL previously opened and notified CBP of 16 of these investigations through complaint initiation documents related to the individual

matters.[1] Please note that CRCL has been monitoring this issue for some time and has waited to initiate a larger investigation until it had accrued substantial information indicating a potential civil rights related concern. Accordingly, these complaints range from fiscal year 2015 to 2019. CRCL continues to receive similar allegations and has decided to no longer open complaints on this issue due to the length of time it takes to receive information from CBP related to these matters.[2] To date CRCL has received over 100 allegations related to these issues. The purpose of this memorandum is to notify you of the two additional complaints and to indicate that all 18 complaints, summarized below, are now retained for investigation.

ALLEGATIONS

As noted above, CRCL previously requested information related to the following 16 complaints. Accordingly, CBP is already aware of these matters and previously provided CRCL documents and other information related to these complaints. Nonetheless, we are providing summaries, because these complaints are incorporated into our larger investigation.

**Allegations Involving Minors Being Treated as Adults**

*Complaint No. 15-12-CBP-0726*

On September 17, 2015, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of his encounter with USBP. According to his Form I-213, USBP apprehended him on September 2, 2015, and took him to McAllen Border Patrol Station for processing. He alleged that Border Patrol Agents (BPAs) threatened to charge him with forgery when he showed them his birth certificate. He alleged that BPAs placed him in detention with adults for approximately three days. His I-213 states that he admitted to being an adult, that the birth certificate in his possession was not his, and that his correct birthdate is January 2, 1997. An addendum to his I-213 also states that he claimed to be a minor and that his uncle provided a birth certificate with a birthdate of January 2, 1998.

*Complaint No. 15-12-CBP-0727*

On September 17, 2015, CRCL received allegations regarding unaccompanied UAC (b)(6) (b)(6), who was reportedly 15 at the time of her encounter with USBP. According to her I-213, USBP apprehended her on September 13, 2015, and took her to Harlingen Border Patrol Station for processing. Her I-213 also states that she was taken to McAllen Border Patrol Station prior to transfer to the Office of Refugee Resettlement (ORR) on September 16, 2015. She alleged that BPAs accused her and two other minors of lying about their age, ripped-up her birth certificate, and placed her in a holding cell with adults for two days. She alleged that a BPA asked those in the cell if any of them were minors and that she and two

---

[1] Per CRCL's complaint process, CRCL complaint investigations may follow different paths. Short form complaints are investigated by CRCL. Referred complaints are investigated by CBP's Office of Professional Responsibility, and CRCL reviews the record of investigation. Retained complaints, such as this matter, often group similar short form and referred complaint to form a retained complaint that address a large policy or procedural issue.

[2] These new and similar allegations are recorded in CRCL's database, which is monitored for patterns and trends. Should CBP like more information on these additional allegations, CRCL can provide it.

others indicated they were. Following that, she reported they were moved into an empty holding cell, where she remained for a brief period.

*Complaint No. 16-03-CBP-0116*

On December 15, 2015, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of her encounter with USBP. According to her I-213, USBP apprehended her on December 3, 2015, and took her to Brownsville Border Patrol Station for processing. She alleged that BPAs accused her of lying about her age and placed her in an adult detention facility for approximately five to six days. She alleged that a BPA humiliated her during her questioning, saying, "You are a fucking lady. Stop lying. You are a lady and a bitch. Everyone from Guatemala are fucking liars. You are 30 or 40 years old. Look at the wrinkles you have." According to ENFORCE Alien Removal Module (EARM), on December 5, 2015, she was transferred to Port Isabel Service Detention Center, where she remained until December 10, 2015, when the Consulate of Guatemala reportedly verified her date of birth.

*Complaint No. 16-04-CBP-0124*

On January 8, 2016, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of his encounter with USBP. According to his I-213, USBP apprehended him on December 27, 2015, and took him to Yuma Border Patrol Station for processing. He alleged that he reported his correct date of birth but was given a bracelet with a birthdate that made him 18. He alleged that he repeatedly notified BPAs that he was a minor and could verify his age, but he was ignored, told that nothing could be done, and was processed as an adult. According to EARM, he was released from the Florence Staging Facility on or about January 6, 2016, after CBP received a copy of his birth certificate.

*Complaint No. 16-04-CBP-0128*

On December 31, 2015, CRCL received allegations regarding UAC (b)(6) (b)(6) who was reportedly 16 at the time of his encounter with USBP. According to his I-213, BPAs apprehended him on December 26, 2015, and took him to Yuma Border Patrol Station for processing. He alleged that BPAs told him that he would be deported, because he is an adult. According to EARM, he was transferred to the Florence Staging Facility, where he was detained from December 29-31, 2015. An officer at the U.S. Immigration and Customs Enforcement (ICE) facility reportedly inquired about his age and assisted him with getting a forensic dental test to prove he was a minor.

*Complaint No. 16-05-CBP-0176*

On February 9, 2016, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of his encounter with USBP. According to his I-213, BPAs apprehended him on December 19, 2015, and took him to Brownsville Border Patrol Station for processing. He alleged that he told BPAs that he was 17, but they believed he was 25. He alleged that BPAs separated him from his brother, who was 15 at the time, and placed Arturo

in a 3' x 8' cell with another individual. He alleged that BPAs ordered both of them to remove all of their clothing and kept him in the cell from December 19, 2015, until the early morning of December 21, 2015, when he was removed from the cell, fingerprinted, and confirmed to be a minor. He said that after USBP determined he was a minor, he was transferred to an ORR shelter, where he was reunited with his brother.

*Complaint No. 16-01-CBP-0338*

On October 4, 2015, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of his encounter with USBP. According to his I-213, BPAs apprehended him on June 30, 2015, and took him to Douglas Border Patrol Station for processing. He alleged that BPAs asked him his age during transport and that he responded that he was 17. He alleged that he witnessed a BPA write that he was 18. He said that he was reluctant to correct the BPA, because the BPA reportedly had previously hit him and he was fearful. He alleged that he also told another BPA at the station that he was 17, but he was again documented as being 18. He was reportedly transferred to the Florence Staging Facility with adults and remained there for several days until he reportedly informed someone that he was a minor. He alleged that he was isolated from general population for several days until a doctor examined his teeth and confirmed that he was a minor. According to an amendment on his I-213, the Guatemalan Consulate provided USBP his birth certificate on July 16, 2015, confirming he was a minor.

*Complaint No. 16-09-DHS-0430*

On June 13, 2016, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of his encounter with USBP. According to his I-213, BPAs apprehended him on May 28, 2016, and took him to the Brownsville Border Patrol Station for processing. He alleged that he informed BPAs that he was a minor and was initially placed in a hold room with other minors. He alleged that after 30 minutes he was transferred to an "adult immigration cell," because he could not provide documentation to prove his age. According to EARM, he was transferred to Port Isabel Service Detention Center, where he was detained with adults from May 29, 2016, until June 10, 2016, when the Honduran Consulate provided a copy of his birth certificate to ICE confirming he was minor.

*Complaint No. 17-08-CBP-0303*

On April 25, 2017, CRCL received allegations regarding UAC(b)(6) (b)(6), who was reportedly 13 at the time of his encounter with USBP. According to his I-213, BPAs apprehended him on April 6, 2017, and took him to McAllen Border Patrol Station for processing. He alleged that he told a BPA that he was only 13, but they reportedly responded that he looked 23 and was not a minor. He alleged that he presented his birth certificate, but the BPA reportedly said it was fraudulent. The UAC alleged that the BPA laughed at him, accused him of providing false information, and threw his birth certificate in the trash. He alleged that the BPA threatened that he would be detained for years and that he would knock out his teeth, if he did not admit to being an adult. He alleged that he felt pressured by the reported threats and claimed to be 19. According to EARM, he was transferred from Harlingen

Case 1:25-cv-04349-AS    Document 1-1    Filed 05/22/25    Page 5 of 11

Border Patrol Station to the South Texas Detention Facility, where he spent 28 days. According to EARM, The UAC was able to verify his actual age after being interviewed by the Honduran Consulate on May 5, 2017.

*Complaint No. 18-08-CBP-0281*

On May 2, 2018, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 16 at the time of his encounter with USBP. According to his I-213, BPAs apprehended him on March 28, 2018, and took him to the Fort Brown Border Patrol Station. He alleged that he provided a BPA his birth certificate, which indicated his date of birth as November 16, 2001. He alleged that the BPA told him that the birth certificate was not valid. According to an EARM entry on March 29, 2018, he "provided a false DOB (11/16/2001) in order to qualify as a juvenile while at the Fort Brown Border Patrol Station." EARM does not indicate whether he provided a birth certificate. According to EARM, he "later admitted while at the RGV Centralized Processing Center that his correct date of birth is 11/16/1999." According to EARM, after being transferred to an adult detention facility, he reportedly contacted his sister, who on April 20, 2018, faxed a copy of his birth certificate that confirmed he was 16.

*Complaint No. 18-10-DHS-0515*

On July 16, 2018, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of her encounter with USBP. According to her I-213, BPAs apprehended her on May 5, 2018, and took her to the Rio Grande Valley Centralized Processing Center (CPC) for processing. She alleged that she presented her birth certificate and notified USBP that she was a minor. She alleged that USBP called her a liar and said that her birth certificate belonged to someone else. According to her I-213, "The subject presented an altered Honduran birth certificate claiming to be a 17 year old UAC. After further interview and questioning the subject of the document presented, the subject freely self-admitted to her DOB being wrong. The subject stated her true DOB is (b)(6). The subject is 19 years old." USBP reportedly held her at the CPC for seven days and transferred her to the custody of ICE, who held her in adult detention facilities for about a month until ICE was able to confirm that she was a minor.

*Complaint No. 18-10-DHS-0509*

On July 3, 2018, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 16 at the time of his encounter with USBP. According to his I-213, BPAs apprehended the UAC on May 25, 2018, and took him to Brownsville Border Patrol Station for processing. The UAC alleged that he provided his birth certificate indicating that he was 16, but BPAs did not believe that he was a minor. USBP reportedly processed him as an adult and transferred him to the custody of ICE at Port Isabel Detention Center on May 30, 2018. According to EARM, the Honduran Consulate eventually was able to verify his age, concluding that he is a minor.

CRCL has not previously provided notice of or requested information related to the following two complaints.

Protected by the Attorney-Client and Deliberative Process Privileges    5

*Complaint No. 19-03-CBP-0166*

On December 20, 2018, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 16 at the time of his encounter with USBP. According to his I-213, BPAs apprehended him on December 18, 2015, and took him to McAllen Border Patrol Station for processing. He allegedly provided his birth certificate, indicating a date of birth of February 19, 1999. The BPA reportedly did not believe him and threatened him with imprisonment and deportation for lying. According to his I-213, he admitted to being an adult and that his grandfather provided him a fake birth certificate. According to the I-213, "It is evident subject is an 18 year old adult, however, since subject is in possession of what he indicated to be a fake document, the Juvenile Placement Request will be submitted."

*Complaint No. 19-07-CBP-0301*

On April 26, 2019, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of his encounter with USBP. According to his I-213, BPAs apprehended him on March 12, 2019, and took him to the Tucson Coordination Center for processing. He alleged that provided his correct date of birth, indicating that he was a minor, and was placed in custody with other minors. After several days, a BPA reportedly approached him and other minors, said that there were adults among their group, and threatened to put anyone determined to be an adult in jail. He reportedly was worried that his birth certificate may have been inaccurate based upon a story his mother had told him of his birth being registered late. He alleged that he spoke with a BPA and stated that he believed he was a minor, and the BPA reportedly responded that his birth certificate was likely fake. He alleged that his parents could verify, but the BPA refused to assist. According to EARM, he was transferred to an adult detention facility, where he was held for several weeks until the Honduran Consulate confirmed that he was a minor.

**Allegations Involving Inappropriate Handling of Birth Certificates**

*Complaint No. 17-02-CBP-0023*

On November 1, 2016, CRCL received allegations regarding UAC (b)(6) (b)(6) and his brother (b)(6), who were reportedly 15 and 17, respectively, at the time of their encounter with OFO. According to their I-213s, the UAC attempted to enter the United States at the Calexico West Port of Entry on October 27, 2016. According to EARM, after being referred for further inspection, they were escorted to the Admissibility Enforcement Unit for further processing. They alleged that an officer in a blue uniform took their birth certificates and did not return them when they were transferred to ORR custody on October 28, 2016.

*Complaint No. 17-01-CBP-0024*

On October 4, 2016, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 16 at the time of his encounter with USBP.

According to his I-213, BPAs apprehended him on September 29, 2016, and took him to McAllen Border Patrol Station for processing. He alleged that USBP did not return his birth certificate when he was transferred to ORR custody on October 2, 2016.

*Complaint No. 17-01-CBP-0025*

On October 3, 2016, CRCL received allegations regarding UAC (b)(6) (b)(6), who was reportedly 17 at the time of her encounter with OFO. According to her I-213, she attempted to enter the United States without proper documents at the Paso Del Norte Port of Entry on September 26, 2016, and was transferred to a nearby hold room, where she spoke with a CBP Officer (CBPO). She alleged that she provided the CBPO her birth certificate, which she reportedly later saw attached to other documents and in the possession of another official. She alleged that CBP did not return her birth certificate when she was transferred to ORR custody on September 28, 2016.

*Complaint No. 17-05-CBP-0230*

On February 27, 2017, CRCL received allegations regarding UAC (b)(6) (b)(6) who was reportedly 16 at the time of her encounter with USBP. According to her I-213, BPAs apprehended her on December 17, 2016, and took her to McAllen Border Patrol Station for processing. She alleged that a BPA took her birth certificate and court documents, which detailed sexual abuse in her home country, and threw them in the trash. She alleged that she told another BPA what happened, and he reportedly retrieved the documents from the trash. The BPA allegedly returned her birth certificate, but not her court documents.

ADDITIONAL AREAS TO BE REVIEWED

The allegations discussed above relate to the age determination of UAC in CBP custody and CBP's handling of UAC birth certificates. In addition to these allegations, CRCL will review any other important civil rights and civil liberties issues that may arise during the review of these complaints.

CRCL

*CRCL mission.* CRCL supports the Department's mission to secure the Nation while preserving individual liberty, fairness, and equality under the law. CRCL integrates civil rights and civil liberties into all the Department's activities:

- Promoting respect for civil rights and civil liberties in policy creation and implementation by advising Department leadership and personnel, and state and local partners;

- Communicating with individuals and communities whose civil rights and civil liberties may be affected by Department activities, informing them about policies and avenues of redress, and promoting appropriate attention within the Department to their experiences and concerns;

- Investigating and resolving civil rights and civil liberties complaints filed by the public regarding Department policies or activities, or actions taken by Department personnel;

- Leading the Department's equal employment opportunity programs and promoting workforce diversity and merit system principles.

*CRCL authorities.* Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials of abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. In investigating complaints, if CRCL believes that the complaints raise similar issues, CRCL may look into whether there are systemic problems that justify a broader investigation. Pursuant to its authority under 6 U.S.C. § 345(a)(3), CRCL shall assist components to "periodically review Department policies and procedures to ensure that the protection of civil rights and civil liberties is appropriately incorporated into Department programs and activities."[3] Additionally, pursuant to DHS Delegation Number 19003, issued October 26, 2012, the Secretary has delegated to the Officer of CRCL the authority to "assess new and existing policies throughout the Department for the policies' impact on civil rights and civil liberties" and "review . . . programs within any Component to ensure compliance with standards established by the Officer for CRCL to protect civil rights and civil liberties." The procedures for CRCL investigations and the recommendations they may generate are outlined in DHS Management Directive 3500, DHS Instruction 046-01-001, and DHS Instruction 046-01-002.

*Access to information.* 42 U.S.C. § 2000ee-1(d) grants CRCL access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function. Management Directive 3500 further authorizes CRCL to:

- "Notify[] the relevant DHS component(s) involved of the matter and its acceptance by CRCL, and whether the matter will be handled by CRCL or by the component organization";

- "Interview[] persons and obtain[] other information deemed by CRCL to be relevant and require[e] cooperation by all agency employees"; and

- "Access[] documents and files that may have information deemed by CRCL to be relevant."

Additionally, DHS Instruction 046-01-002 (V)(B)(2) provides component heads are to ensure that CRCL is given access to information, material, and personnel determined by CRCL to be necessary to carry out or review investigations. This memorandum serves as a request for information or assistance pursuant to § 5.l(e) of the "Memorandum of Agreement between

---

[3] In addition, pursuant to 42 U.S.C. § 2000ee-1(a)(2), CRCL has the authority to "periodically investigate and review department, agency, or element actions, *policies, procedures, guidelines,* and related laws and their implementation to ensure that such department, agency, or element is adequately considering privacy and civil liberties in its actions" (emphasis added).

[CRCL] and [CBP] Regarding the Coordination of CRCL Complaint Investigations" dated February 28, 2017.[4]

*Reprisals forbidden.* In addition, 42 U.S.C. § 2000ee-1(e) forbids any Federal employee to subject a complainant or witness to any "action constituting a reprisal, or threat of reprisal, for making a complaint or for disclosing information to" CRCL in the course of this investigation. This memorandum and the accompanying request for documents and information are issued pursuant to these authorities.

*Privilege and required transparency.* Our communications with CBP personnel and documents generated during this review, particularly the final report, will be protected to the maximum extent possible by attorney-client and deliberative process privileges. Under 6 U.S.C. § 345(b), however, we submit an annual report to Congress—also posted on CRCL's website—that is required to detail "any allegations of [civil rights/civil liberties] abuses . . . and any actions taken by the Department in response to such allegations."

We look forward to working with your staff on this matter and will report back to you on our findings and any recommendations.

SCOPE OF REVIEW

The purpose of our review is to 1) determine whether CBP has complied with applicable policies and procedures related to the age determination of purported UAC in CBP custody; 2) determine whether CBP has complied with applicable policies and procedures related to the handling of birth certificates; 3) investigate the allegations in the complaints referenced; 4) determine if the facts we find suggest that the Constitution, a federal statute, or a Departmental policy has been violated; and 5) assess whether CBP should take any steps to address and concerns found during the investigation.

QUESTIONS PRESENTED

(b)(5)


INITIATING THE INVESTIGATION

We request an initial discussion with your agency about these complaints and CRCL's plans for reviewing the matter. (b)(6) will be handling the review. We request that CBP schedule an initial discussion with Mr. (b)(6) as soon as possible. We look forward to working together to determine all the facts surrounding this matter and, if appropriate, the best way forward. If you

---

[4] § 5. l(e) of the Memorandum of Agreement provides, in relevant part, that CRCL will issue information requests clearly identifying the documents, information, video and personnel CRCL is requesting from CBP and that CBP will provide the same within 60 days unless an extension is approved by CRCL.

*Protected by the Attorney-Client and Deliberative Process Privileges*      9

have any questions, please do not hesitate to contact Mr. (b)(6) by phone at (b)(6) or by email at (b)(6)

Copies to:

Rodney S. Scott
Chief
U.S. Border Patrol
U.S. Customs and Border Protection
(b)(6), (b)(7)(C)

Jon Roop
Chief of Staff
U.S. Border Patrol
U.S. Customs and Border Protection
(b)(6), (b)(7)(C)

Todd Owen
Executive Assistant Commissioner
Office of Field Operations
U.S. Customs and Border Protection
(b)(6), (b)(7)(C)

Allison M. Suliveras
Chief of Staff
Office of Field Operations
U.S. Customs and Border Protection
(b)(6), (b)(7)(C)

Debbie Seguin
Acting Chief of Staff
U.S. Customs and Border Protection
(b)(6), (b)(7)(C)

Rebekah Salazar
Executive Director
Privacy and Diversity Office
Office of the Commissioner
U.S. Customs and Border Protection
(b)(6), (b)(7)(C)

Jeffery R. Egerton
Acting Deputy Executive Director
Office of Professional Responsibility
U.S. Customs and Border Protection
(b)(6), (b)(7)(C)

Kristy Montes
Director, Custody Support and Compliance Division
Privacy and Diversity Office
U.S. Customs and Border Protection
(b)(6), (b) (7)(C)