

January 27, 2025

***Sent via Email and U.S. Certified Mail***

| | |
|---|---|
| U.S. Department of Homeland Security<br>Privacy Office, Mail Stop 0655<br>Department of Homeland Security<br>2707 Martin Luther King Jr. AVE SE<br>Washington, DC 20528-065<br>foia@hq.dhs.gov | U.S. Immigration and Customs Enforcement<br>Freedom of Information Act Office<br>500 12th Street SW, Stop 5009<br>Washington, DC 20536-5009<br>ICE-FOIA@dhs.gov |
| Office for Civil Rights and Civil Liberties<br>Mail Stop 0190<br>ATTN: CRCL FOIA Officer<br>U.S. Department of Homeland Security<br>2707 Martin Luther King, Jr. Avenue SE,<br>Washington, DC 20528-0190<br>crclfoia@hq.dhs.gov | U.S. Customs and Border Protection<br>Freedom of Information Act Office<br>1300 Pennsylvania Avenue NW<br>Mail Stop 1181<br>Washington, DC 20229-1181<br>CBPFOIAPublicLiaison@cbp.dhs.gov |
| Office of the Inspector General<br>U.S. Department of Homeland Security<br>245 Murray Lane SW, Mail Stop 0305<br>Washington, DC 20528-0305<br>FOIA.OIG@oig.dhs.gov | |

**RE: FREEDOM OF INFORMATION ACT REQUEST**

To Whom it May Concern:

Robert F. Kennedy Human Rights ("RFK HR"), the National Immigration Project ("NIPNLG") and the American Civil Liberties Union of Louisiana ("ACLU-LA") (collectively, "Requesters" or "we") submit this request pursuant to the Freedom for Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, for public records in the custody of the Department of Homeland Security ("DHS") and its component agencies, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), the Office for Civil Rights and Civil Liberties ("CRCL"), and the Office of the Inspector General ("OIG"). We request copies of the records identified in the numbered paragraphs below, pertaining to DHS's current age determination policies.

We ask that you please direct this request to all appropriate offices and departments within each agency, including but not limited to: the Office of Immigration Detention Ombudsman ("OIDO"), Enforcement Removal Operations ("ERO"), ICE Health Service Corps ("IHSC") and

the IHSC Managed Care Branch, DHS/ICE/CBP Offices of Public Relations ("OPR"), Homeland Security Investigations ("HSI"), Juvenile and Family Residential Management Unit ("JFRMU"), ICE Detention and Removal Office ("DRO"), and the Field Office Juvenile Coordinator ("FOJC").

We also request expedited processing for this request, pursuant to 5 U.S.C. § 552(a)(6)(E) and agency regulations, and a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). In accordance with 5 U.S.C. § 552(a)(6)(A)(i), we expect a response to this request within 20 working days, unless otherwise permitted by statute.

**Purpose of the Request**

This request concerns DHS's age determination procedures,[1] including the use of CBP border interviews, dental and bone radiographs, and birth certificate verification procedures, to determine the age of individuals in its custody. Age determination procedures are a crucial component of the statutory scheme that affords numerous protections and rights[2] to unaccompanied children. Requestors have witnessed and represented children subjected to adult ICE detention based on potentially racially discriminatory application of these age determination procedures, including the use of scientifically debunked radiographs and statements coerced from children by CBP officials.[3]

In its 2022 Annual Report, CRCL reported that it had "investigated several complaints alleging that ICE improperly determined the ages of individuals in detention facilities who

---

[1] To determine age, 8 U.S.C. § 1232(b)(4) provides that: "The Secretary of Health and Human Services, in consultation with the Secretary of Homeland Security, shall develop procedures to make a prompt determination of the age of an alien, which shall be used by the Secretary of Homeland Security and the Secretary of Health and Human Services for children in their respective custody. At a minimum, these procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied alien."

[2] The Trafficking Victims Protection Reauthorization Act ("TVPRA") creates a specific set of rights and protections for unaccompanied immigrant children in the custody of the federal government. *See generally* 8 U.S.C. § 1232. Among those are the right to be held in separate accommodations from adults and to be placed in the least restrictive setting that is in the best interest of the child. *Id.* DHS regulations, which apply to ICE and CBP facilities, require sight, sound, and physical separation of detained people under age 18 from detained adults. *See* 8 C.F.R. §§ 115.14(b), 115.114(b).

[3] *See e.g.,* Robert F. Kennedy Human Rights, et al., *Human Rights groups file federal lawsuit for unaccompanied child wrongfully held in ICE detention* (February 26, 2024), https://rfkhumanrights.org/press/human-rights-groups-file-federal-lawsuit-for-unaccompanied-child-wrongfully-held-in-ice-detention/; *see also* Corkish & Diaz, *It's Unethical to Use Dental X-Rays to Send Immigrant Children to Adult Detention Facilities*, BU School of Public Health (Jul 3, 2019); Brittny Mejia, Kate Morrissey, *U.S. Is Using Unreliable Dental Exams to Hold Teen Migrants in Adult Detention*, LA Times (Jun. 2, 2019); *see also* DHS OIG, *Age Determination Practices for Unaccompanied Children in ICE Custody*, at 1 (Nov. 10, 2009) (noting that use of radiographs to determine age "has been criticized by some in the medical and advocacy communities as unreliable").

purported to be minor" and that it had identified "concerns with ICE's age determination procedures."[4] In response to a Recommendation Memo sent by CRCL to ICE in July 2021, ICE had "agreed to provide training about its age determination procedures to relevant ICE personnel and to update its age determination policies and procedures with a clarification about verifying age claims and a reminder about using medical assessments as a last resort."[5] CRCL has investigated similar complaints with respect to age determinations of children in CBP custody. In a May 11, 2020, memorandum notifying CBP that CRCL had opened an investigation to determine "whether CBP has complied with applicable policies and procedures related to the age determination" of unaccompanied children in CBP custody (hereafter "2020 CRCL Investigation Retention Memo"), CRCL stated:

> Over the last five years, the U.S. Department of Homeland Security, Office for Civil Rights and Civil Liberties (CRCL) has received over 100 allegations that U.S. Customs and Border Protection (CBP) violated the civil rights and civil liberties of unaccompanied children (UAC) when determining their ages or verifying the authenticity of their birth certificates. These allegations arise from reported incidents at both U.S. Border Patrol (USBP) stations and Office of Field Operations (OFO) ports of entry. These include similar allegations, such as CBP discarding and destroying birth certificates, pressuring and coercing UAC into incorrectly claiming they are adults, and falsifying records of UAC's ages.[6]

The results of that investigation have not been publicly released by CRCL. In the meantime, Requestors remain deeply concerned about improper age determinations of children, particularly Black migrants in ICE and CBP custody.

Requesters are immigrant rights organizations that provide legal representation to individuals detained by DHS, including in facilities under the jurisdiction of the NOLA ICE Field Office. Requesters work closely with people detained at these facilities and advocate alongside them. Knowledge of DHS's current age determination procedures is relevant for Requesters' representation of people detained at NOLA ICE Facilities and for Requesters' advocacy efforts to ensure the rights of people detained at these facilities are respected.

Requesters have a vested interest in the conditions in which their clients and community members are held. Requesters urgently seek information on the federal government's policies, directives, and actions relating to age determinations of those in DHS custody. The disclosure of the information sought below will contribute to "public understanding of the operations or activities of the government," 5 U.S.C. § 552(a)(4)(A)(iii), and will provide the public with information necessary to engage in the democratic process and public debate regarding the use of

---

[4] DHS CRCL, Fiscal Year 2022 Annual Report to Congress 58 (Nov. 17, 2023), available at https://www.dhs.gov/sites/default/files/2023-12/23_1117_crcl_fy22-annual-report-508.pdf.

[5] *Id.* at 58.

[6] Memorandum from Cameron P. Quinn, Officer, Office for Civil Rights and Civil Liberties, to Mark A. Morgan, Acting Commissioner, U.S. Customs and Border Patrol, et. al. (May 11, 2020), available at https://www.dhs.gov/sites/default/files/publications/retention-memo-cbp-age-determination-birthcertificateverification-05-11-20.pdf.

ICE detention. This FOIA request furthers the efforts of Requestors to investigate, educate the public about, and advocate against anti-Black racism within federal immigration enforcement agencies, to challenge the mass detention of immigrants generally, and expose inhumane conditions within immigration detention. We seek this information in order to better advocate for our clients and to advance the civil rights and safety of all children in federal immigration detention. Disclosure would thus be "in the public interest." 6 C.F.R. § 5.11(k)(1).

**Definitions**

The Records request below incorporates the following definitions:

"Communications" refers to the transmittal of information in any format, including, but not limited to, the communication formats listed under "Record."

Requestors use the terms "Age determination" and "age redetermination" interchangeably to define any material that pertains to the policies and practices of determining the age of individuals in DHS, ICE, CBP, or ORR custody and particularly whether individuals in custody are over 18 years of age.

"Age decision" refers to a finalized decision in any form, including an email, transfer document or request, case note, Significant Incident Report (SIR), I-213, Record of Investigation, or medical report that determines a person's age. This also includes any age decision documentation, including memos, created by ORR that is in DHS possession.

"Personnel" refers to an individual employed by an organization or authorized to act on behalf of an organization, including employees, contractors, contractors' employees, agents, or representatives.

"Records" refers to all information in electronic, written, and/or printed form that is in DHS's constructive possession, directly or indirectly, regardless of where or how the information originated or where or how DHS received it, encompassing but not limited to any information in the Custody of any contractors for purposes of information management for DHS, and including but not limited to: messaging communications between phones or other electronic devices, including but not limited to communications sent via short message service ("SMS"), multimedia message service ("MMS"), or any other messaging service, via Blackberry Messenger, iMessage, WhatsApp, Facebook, Signal, G-Chat, Instagram direct message, Twitter direct message, Slack, and/or any other messaging and communications platform; emails, letters, faxes, and/or any other form of correspondence; minutes and/or notes of meetings and/or phone calls; voicemail messages; images, video, and/or audio data; social media posts; calendar entries; files and their contents, including any notes; logs, spreadsheets, worksheets, and/or coversheets; database entries, analyses of data; metadata; investigations, reports, studies, and/or reviews; internal memoranda; contract, agreements, and/or memoranda of understanding, including but not limited to Intergovernmental Services Agreements; presentations, formal or informal; training criteria, standards, evaluations, and/or materials; orders, directives, and/or instructions; legal opinions and/or memoranda; Policies, procedures, protocols, and/or manuals; guidance and/or guidelines; bulletins, advisories,

and/or alerts; as well as any reproductions thereof that differ in any way from any other reproduction, such as copies containing notations, drafts, and revisions.

"Training Materials" refers to all Records used to instruct, guide, or otherwise prepare Personnel for any aspect of their employment or contract including, but not limited to, electronic Records.

In requesting "Policies," the Requesters seek national policies and guidance, in any format, including memoranda. However, Requesters do not refer to or seek copies of the Performance-Based National Detention Standards, unless annotated or incorporated in another record.

In requesting "Communications," the Requesters seek any record of written correspondence or verbal correspondence, whether formal or informal, in any format, including intra-agency, interagency correspondence, and agency correspondence with third parties.

The date range for all searches should be understood to commence with each provided start date and to end on the date the search for documents responsive to that request is commenced by the agency. *See Ferguson v. U.S. Dep't of Educ.*, 2011 WL 4089880, at *11 (S.D.N.Y. Sept. 13, 2011) (commencement date of agency's search was reasonable cut-off date).

**Request for Information**

Requesters seek the following Records, beginning January 1, 2015, through the time the search responsive to this FOIA request is completed, unless otherwise specified:

1. Any and all Records that were prepared, received, transmitted, collected, and/or maintained by CRCL in connection to its investigation(s) concerning age determination and birth certificate verification procedures, commenced on or before May 11, 2020, including the investigations referenced in the 2020 CRCL Investigation Retention Memo and in the 2022 CRCL Annual Report.[7] This includes:

    a. All complaints filed with CRCL regarding alleged violations of the civil rights of unaccompanied non-citizen children when determining their ages or verifying the authenticity of their birth certificates by DHS component agencies including ICE and CBP;

    b. All Records of Communications between CRCL and DHS component agencies (including CBP and ICE) regarding instances of age determination;

---

[7] Memorandum from Cameron P. Quinn, Officer, Office for Civil Rights and Civil Liberties, to Mark A. Morgan, Acting Commissioner, U.S. Customs and Border Patrol, et. al. (May 11, 2020), available at https://www.dhs.gov/sites/default/files/publications/retention-memo-cbp-age-determination-birthcertificateverification-05-11-20.pdf; DHS CRCL, Fiscal Year 2022 Annual Report to Congress 58 (Nov. 17, 2023), available at https://www.dhs.gov/sites/default/files/2023-12/23_1117_crcl_fy22-annual-report-508.pdf.

5

    c. Any and all Records created in response to complaints filed with CRCL regarding age determination, including all Records related to any past or planned guidance, policies or recommendations by CRCL to DHS (including CBP and ICE) regarding proper implementation of DHS's age determination policies;

    d. Any and all expert reports, opinions, findings, or materials relied upon by CRCL in issuing the above guidance, training materials, policies or recommendations to DHS and/or investigating alleged complaints involving age determinations.

    e. A copy of the July 2021 CRCL Recommendation Memo sent to ICE, as referenced in the 2022 CRCL Annual Report;

    f. Copies of all complaints involving age determinations referenced in the 2022 CRCL Annual Report;

    g. Any CRCL retention memo issued related to the age determination investigation referenced in the 2022 CRCL Annual Report;

    h. A copy of the February 2022 ICE response, as referenced in the 2022 CRCL Annual Report;

    i. Any ICE training materials on age determinations as developed as referenced in those CRCL retention and recommendation memos;

    j. Any ICE policy/procedure updates/changes/clarifications on age determinations as referenced in those CRCL retention and recommendation memos.

2. A copy of the most current version of the DHS "Age Determinations for Custody Procedures TPU;"

3. A copy of the most current version of the ICE, Enforcement and Removal Operations, Juvenile and Family Residential Management Unit Field Office Juvenile Coordinator Handbook;

4. All Communications to and from DHS, ICE, and CBP personnel pertaining to age determinations or age decisions for individuals including the use of radiographs in age determinations.

**Format of Request**

    The Requesters request that responsive documents and materials be produced in their entirety, including all attachments, enclosures, hyperlinks and internal links, and exhibits. If it is determined that a document contains material or information that falls within a statutory exemption to mandatory disclosure under FOIA, the Requesters ask that such material or information be reviewed for possible discretionary disclosure, consistent with the presumption of openness codified in the Freedom of Information Act Improvement Act of 2016, Pub. L. 114185, 130 Stat.

538. If terms or codes are not in the form template and/or publicly defined, please provide a glossary or other descriptive records containing definitions of acronyms, numerical codes, or terms contained in data responsive to this request. Please search for responsive records regardless of format, medium, or physical characteristics, and including electronic records.

Please provide the requested documents in the following format:

- Data Records in native format when possible (e.g., Excel spreadsheets in Excel);
- Other Records in PDF format when possible;
- Electronically searchable when possible;
- Email attachments provided in sequential order following the email, to preserve the "parent-child" relationship, such that Requesters are able to identify which documents were the attachments to which emails;
- Email parents include BCC and any other hidden fields; and
- Other metadata preserved for all Records.

Please furnish all applicable Records in electronic format as specified above to via email: Sarah Decker at decker@rfkhumanrights.org and Sarah Gillman at gillman@rfkhumanrights.org.

**Requesters**

RFK HR

RFK HR is a non-partisan, not-for-profit organization that advocates for human rights issues and pursues strategic litigation to hold governments accountable for human rights abuses, including by pursuing immigrants' rights and anti-detention advocacy and litigation. RFK HR is committed to transparency, government accountability, and education. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of RFK HR's work. RFK HR regularly publishes in-depth analysis of current events affecting human rights and disseminates information to expose injustice. RFK HR disseminates content through its website—https://rfkhumanrights.org/—and by publishing reports, issuing press releases, and making public statements that reach thousands.

NIPNLG

NIPNLG is a national, nonprofit organization dedicated to providing legal assistance and support to immigrant communities and advocating on behalf of noncitizens. Members and supporters of NIPNLG include attorneys, legal workers, law students, judges, jailhouse lawyers, grassroots advocates, community organizations, and others seeking to defend and expand the rights of immigrants in the United States. NIPNLG litigates, advocates, educates, and builds bridges across movements to ensure that those who are impacted by the U.S. immigration and criminal legal systems are uplifted and supported.

NIPNLG is primarily engaged in disseminating information to the public. It is the author of four treatises on immigration law published by Thomson Reuters. NIPNLG provides technical and

litigation assistance, participates in impact litigation, advocates for fair and just policies and legislation, provides legal training to the bar and the bench, and regularly publishes practice advisories and community resources on immigration law topics that are disseminated to its members and a large public audience through its website, www.nipnlg.org.

ACLU-LA

ACLU-LA is a not-for-profit organization that works to advance and preserve the individual rights and liberties guaranteed by the Constitution and laws of the United States and the State of Louisiana in matters that affect civil liberties and human rights, including the rights of prisoners and immigrants. ACLU-LA is committed to principles of transparency and accountability in government and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU-LU's work.

ACLU-LA regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other civil liberties-related current events. ACLU-LA also publishes "know your rights" materials designed to educate the public about immigrants' rights. ACLU-LU disseminates content through its website—https://www.laaclu.org/—and quarterly newsletters received by thousands of subscribers.

**Expedited Processing**

We request expedited treatment for this FOIA request. This request qualifies for expedited treatment pursuant to 5 U.S.C. § 552(a)(6)(E) and applicable regulations. As demonstrated above, there is a "compelling need" for expedited processing sought by the Requesters. 5 U.S.C. § 552(a)(6)(E)(i)(I). The lack of expedited disclosure of records could "reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(d)(l)(i). Moreover, there exists a clear "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); see also 6 C.F.R. § 5.5(e)(l)(ii) (expedited processing is warranted where 10 there is "[a]n urgency to inform the public about an actual or alleged federal government activity"). The Requesters are therefore entitled to expedited processing of this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), the Requesters apply for a fee waiver. FOIA and applicable agency regulations require fees to be waived when it is determined, based upon the submission of the requester, that the information is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 5 C.F.R. § 5.11(k)(1) (permitting fee waiver when "disclosure of the requested information is in the public interest" and "is not primarily in the commercial interest of the requester"); 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k).

Requesters are non-profit organizations that advocate alongside individuals detained at facilities nation-wide. Access to this information is crucial for the Requesters and the communities they serve to evaluate immigration enforcement actions in their communities, including the conditions of confinement and protocols for detention, confinement and release, and their potential detrimental effects in their communities.

## Conclusion

Thank you for your consideration of this request. There is an urgent need to inform the public of the policies and practices related to the U.S. government's age determination policies, where their implementation has resulted and will continue to result in civil and human rights violations, including racially discriminatory outcomes. This information will assist advocates defending the rights of detained people, including those detained in the NOLA ICE facilities.

If this request is denied in whole or part, the Requesters ask that DHS and its component agencies to justify all deletions or redactions by reference to specific exemptions of FOIA. The Requesters expect DHS and its component agencies to release all segregable portions of otherwise exempt material, and reserve the right to appeal a decision to withhold any records or to deny Requesters' application for waiver of fees.

We look forward to your reply to the request for expedited processing within 10 business days, as required under 5 U.S.C. § 552(a)(6)(E)(ii)(I). Notwithstanding your decision on the matter of expedited processing, we look forward to your reply to the records request within 20 business days, as required under 5 U.S.C. § 552(a)(6)(A)(I). In the event the government is unable to meet that deadline, the Requesters are willing to discuss an appropriate schedule for rolling productions.

If you have any questions regarding the processing of this request, please contact Sarah Decker at 908-967-3245 or decker@rfkhumanrights.org, or Sarah Gillman at 646-289-5593 or gillman@rfkhumanrights.org.

## Certification

The Requesters certify that the above information is true and correct to the best of the Requesters' knowledge. *See* 6 C.F.R. § 5.5(e)(3).

Sincerely,

Sarah Decker, Esq.
Sarah Gillman, Esq.
Robert F. Kennedy Human Rights

                                              Rebecca Scholtz, Esq.
                                              Matt Vogel, Esq.
                                              National Immigration Project

                                              Nora Ahmed, Esq.
                                              Andrew Perry, Esq.
                                              ACLU of Louisiana