UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT F. KENNEDY HUMAN RIGHTS, NATIONAL IMMIGRATION PROJECT, and AMERICAN CIVIL LIBERTIES UNION OF LOUISIANA,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.

Defendants.

Civil Action No. 25-4349 (AS)

## DECLARATION OF CATRINA M. PAVLIK-KEENAN

### I.  Introduction

I, Catrina M. Pavlik-Keenan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Privacy Office of the U.S. Department of Homeland Security ("DHS" or the "Department"). I have held my current position since July 4, 2021. Prior to holding this position, I was the U.S. Immigration and Customs Enforcement FOIA Officer from December 18, 2006, until July 3, 2021. Prior to holding that position, I worked for approximately four years in the FOIA office at the Transportation Security Administration ("TSA"), first as a Supervisory FOIA Analyst, then as Deputy Director for two years, and finally as Director. Prior to working at TSA, I worked for approximately nine years as a FOIA Analyst at the Department of Transportation, holding positions at the Federal Highway Administration, Office of Pipeline Safety, and Office of the Secretary from 1993 to 2002. In total, I have 30 years of experience processing FOIA requests.

2.      I make this declaration in support of Defendant DHS's Brief to the Court regarding the proposed processing rate in the above-captioned case for records gathered from DHS's Office for Civil Rights and Civil Liberties ("DHS-CRCL").  Specifically, this declaration seeks to provide the Court with additional information to explain why it is not practicable for DHS's FOIA Division ("DHS-FOIA") to process more than 750 pages per month in connection with this case. The statements contained in this declaration are based upon my personal knowledge and information provided to me by other DHS Headquarters ("DHS-HQ") employees in the course of my official duties.

3.      Through the exercise of my official duties, I am familiar with DHS-CRCL's receipt and initial handling of the FOIA request dated January 27, 2025 (the "FOIA request"), submitted by Plaintiffs, and the steps taken to respond to the FOIA request.

4.      This declaration provides a description of the DHS-HQ Privacy Office ("DHS-PRIV"), its staff, the search for potentially responsive records, and the reasons for Defendant DHS's position on its proposed processing rate in this case.

## II.   DHS-PRIV'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

5.      DHS-FOIA sits within DHS-PRIV, which in turn is located within DHS-HQ.

6.      Section 5.1(c) of DHS's FOIA regulations provides that "DHS has a decentralized system for processing FOIA requests, with each component handling requests for its records." 6 C.F.R. § 5.1(c). Accordingly, and except for the Cybersecurity and Infrastructure Security Agency ("CISA"), DHS-PRIV typically does not respond to or process FOIA requests on behalf of other operational DHS components outside of DHS headquarters.

7.      The DHS FOIA regulations, at 6 C.F.R. Part 5, Subpart A, set out the steps for a FOIA requester to submit a FOIA request to DHS-HQ Offices as well as all DHS components. The DHS FOIA regulations also describe how DHS handles referrals to other agencies and to other DHS components.

8. As noted, DHS has a decentralized system for processing FOIA requests, which means that most DHS components are independently responsible for handling and processing requests for their records. 6 C.F.R. § 5.1(c). DHS was formed in 2003 from 22 previously disparate domestic agencies into one decentralized agency with 180,000 employees, with the goal of protecting the nation against threats to the homeland. Due to its large, decentralized nature, DHS does not possess an all-inclusive database that captures federal records for the entire Department. A list of DHS components and offices is located online to aid in providing more information to requesters: https://www.dhs.gov/operational-and-support-components. A list of DHS FOIA Offices is also located online: https://www.dhs.gov/foia-contact-information.

### III.  DHS-FOIA and DHS-CRCL Realignment

9. As the Deputy Chief FOIA Officer for DHS-PRIV, I act as DHS's principal point of contact and agency representative on FOIA-related matters for DHS-HQ and all the DHS components. My official duties and responsibilities include the implementation of consistent FOIA management across DHS in collaboration with DHS components. In accordance with this responsibility, I maintain expert knowledge of the DHS FOIA regulations and routinely provide regulatory and policy guidance, technical advice, and assistance across the Department on all FOIA-related matters.

10. In February 2025, DHS Chief Privacy Officer and DHS Chief FOIA Officer Roman Jankowski issued guidance notifying DHS-HQ that in order to streamline FOIA activities, DHS-FOIA would assume responsibility for all FOIA work that was being handled by offices located at DHS-HQ. DHS-FOIA would thus serve as the only FOIA office for DHS-HQ. Accordingly, the management and operations of the FOIA office located within DHS-CRCL ("CRCL-FOIA") would be transferred to DHS-FOIA by March 31, 2025. Shortly thereafter, CRCL-FOIA began to migrate its FOIA operations to DHS-FOIA. CRCL-FOIA had two full time employees facilitate the migration process to ensure DHS-FOIA could handle the processing of CRCL-FOIA requests and accompany litigation.

11. On March 21, 2025, the majority of DHS-CRCL employees, including those working in CRCL-FOIA, were notified that they would be placed on administrative leave until their final date of employment of May 23, 2025. Because the majority of all DHS-CRCL employees were placed on administrative leave, DHS-HQ has experienced significant challenges with completing FOIA tasks on behalf of DHS-CRCL, including identifying appropriate custodians, conducting searches, identifying and retrieving responsive records, and ensuring timely productions. Furthermore, DHS-FOIA had not completed the HQ-FOIA realignment process before these CRCL employees had been notified of CRCL's realignment, and therefore experienced additional system access and file location issues related to CRCL-FOIA's work (although to be clear, DHS-FOIA was able to locate the relevant CRCL files for this request). The Department is beginning to staff the DHS-CRCL office consistent with plans for executing statutory functions. However, the management and operations previously conducted by CRCL-FOIA will remain with DHS-FOIA.

12. DHS-FOIA receives and processes FOIA requests currently for the following DHS-HQ Offices: Office of the Executive Secretary, Management Directorate, Office of Strategy, Policy, and Plans, Office of Operations Coordination, Office of Partnership and Engagement, Privacy Office, CRCL, Center for Prevention Programs and Partnerships, Office of the General Counsel, Office of Legislative Affairs, Office of Public Affairs, Office of the Citizenship and Immigration Services Ombudsman, Office of the Immigration Detention Ombudsman, Office of the Secretary, Office of Biometric Identity Management ("OBIM"), Federal Protection Service ("FPS"), Science and Technology Directorate ("S&T"), and the Office of Intelligence and Analysis ("I&A"). Additionally, as indicated in the paragraph above, DHS-FOIA, in accordance with an internal agreement, receives and processes FOIA requests for the operational component Cybersecurity and Infrastructure Security Agency ("CISA").

13. Of the offices mentioned in the previous paragraph, CRCL, FPS, and I&A were components that previously had independent FOIA offices. In March 2025, the FOIA responsibilities for these offices were reassigned to DHS-FOIA. Those responsibilities occurred

without the reassignment of the staff from those three offices (although DHS-FOIA has received employees via a detail assignment to assist with processing I&A records).

14. Accordingly, DHS-FOIA has seen a substantial increase in workload without the corresponding increase in staff allocation. In fact, DHS-FOIA has lost five full time FOIA analysts who elected to take early retirement. In FY25, to date, DHS-PRIV has received 100,273 FOIA requests, of which 58,042 requests have been processed. The current backlog is approximately 42,853 FOIA requests. DHS-FOIA also took on a total of 797 additional FOIA requests as a result of realignment, including 119 from DHS-CRCL.

15. DHS-FOIA generally processes requests on a first-in, first-out basis. In other words, requests are placed in queues and are generally processed in the order that they were received, unless they are determined to be eligible for expedited processing or are subject to a court order. DHS-FOIA has always tried to apply its limited processing resources fairly to requests by ensuring that no single request takes up disproportionate staff time. Devoting too much time to any single request, or type of request, would mean that other requests are significantly delayed.

16. DHS-FOIA currently employs 38 full-time FOIA analysts. On average, each FOIA analyst is assigned to handle between 200-500 routine FOIA requests and 42 complex FOIA requests. The FOIA request in this case is considered complex (based on factors such as the various types of records and the number of responsive records). Additionally, DHS-FOIA is the defendant in 122 cases in federal FOIA litigation. Currently, DHS-FOIA's litigation team includes 6 full time analysts (of the 38) that help process records for cases in litigation, including coordinating litigation consultations to other agencies and making releases to plaintiffs; in addition, these employees coordinate FOIA appeals for DHS-HQ and are also responsible for providing training, handling proactive disclosures to DHS's FOIA reading room, and other assigned special projects. With regard to processing records, on average, each analyst on the DHS-FOIA litigation team processes approximately 1,750 pages per month across all of the FOIA litigation cases with active productions. By "process," I mean that a reviewer first determines if pages are responsive to the request, and then reviews them for applicable FOIA exemptions, so that only responsive, non-

exempt information is produced to requesters. DHS-FOIA's litigation staff are currently processing approximately 10,500 pages per month. The proposed rate of 750 pages per month in this matter thus represents approximately 7.1% of DHS-FOIA's litigation staff time.

17. DHS-FOIA is currently exploring options to increase FOIA processing capacity by reassigning or hiring new staff (including, if necessary, by seeking applicable exceptions to general limitations on hiring), streamlining its internal processes, or taking advantage of technology. For instance, DHS-FOIA is currently working with our contract support vendor to acquire up to six (6) new FOIA analysts. This will take some time as the current vendor will need to find qualified staff and then they will need to go through the government clearance process.

18. On January 27, 2025, CRCL-FOIA received a FOIA request from Plaintiffs. CRCL staff, prior to the realignment, conducted a search of CRCL's records and identified 973 potentially responsive records consisting of 6157 pages.

19. Given these circumstances and current resource limitations, DHS-FOIA has limited ability to process more than seven hundred fifty (750) pages a month for this matter. In my judgment, a monthly processing rate greater than 750 pages will substantially burden the office to the detriment of other litigations and other requests. Specifically, processing at a greater rate—such as Plaintiffs' proposal to process 2000 pages each month—is not "practicable" because it would require the Department to redirect its finite and already thinly stretched resources at the expense of other FOIA cases, most of which were filed before this one. DHS-FOIA would have to reassign staff from the cases to which they are currently assigned to this case, which would halt or dramatically reduce the Department's ability to process those other cases). Processing at a greater rate would also create a risk that DHS-FOIA would be unable to comply with existing court-ordered processing schedules already in place. Processing at a greater rate would cause significant and long-lasting delays to DHS-FOIA's processing of other, first-in-time requests. If during the course of processing it becomes clear that a higher rate is practicable, DHS-FOIA will promptly notify the parties, and is willing to revisit this rate if it is feasible.

20. Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare the foregoing is true and correct to the best of my knowledge and belief.

Signed this 11th day of July 2025,

_____
CATRINA M. PAVLIK-KEENAN