

June 16, 2025

**VIA ECF**
Honorable Arun Subramanian
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Robert F. Kennedy Human Rights v. Dep't of Homeland Security*, 25 Civ. 4349 (AS)

Dear Judge Subramanian:

Plaintiffs respectfully request that the Court order processing of approximately 6100 pages identified by Defendant Office for Civil Rights and Civil Liberties (CRCL) at a rate of 3000 pages per month. The CRCL documents record investigations of allegations that officials from Defendant Department of Homeland Security (DHS) coerced unaccompanied immigrant children into making false confessions of adulthood to deprive them of protections against adult immigration detention.

CRCL collected these documents before March 21, 2025, when DHS placed on leave all CRCL staff, including FOIA officers, before firing them. DHS now argues that staffing constraints limit processing to 750 pages per month, requiring until March 2026 (15 months after Plaintiffs' FOIA request), not including possible future disputes over redactions. DHS cannot rely on its decimation of CRCL to skirt FOIA. Moreover, because Plaintiffs are entitled to expedited processing, the CRCL documents must be processed "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). *See Brennan Center for Justice v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 547 (S.D.N.Y. 2018) (Agency delay presumed when it "fails to process an expedited FOIA request within the twenty-day time limit applicable to standard FOIA requests") (citation modified).

  **I.   Plaintiffs are entitled to expedited processing.**

Plaintiffs have demonstrated "compelling need" for expedited processing for three reasons. First, both 5 U.S.C. § 552(a)(6)(E)(v)(I) and 6 § C.F.R. § 5.5(e)(1)(i) recognize compelling need when delay in releasing documents "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." Courts have long recognized that the dire consequences to children held in adult detention rise to an imminent threat to safety. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 327–28 (1993) (Stevens, J., dissenting) (criticizing placement of immigrant children in adult detention, where "conditions of confinement were admittedly deplorable" and included "commingling harmless children with adults of the opposite sex in detention centers protected by barbed-wire fences" and "subjecting them to arbitrary strip searches") (citation modified). Today, adult detention continues to impose an imminent threat to the physical safety of children.[1] Recent reporting on immigration detention confirm these threats, including denial of sufficient food and

---

[1] *See* Robert F. Kennedy Human Rights et al., *Inside the Black Hole: Systemic Human Rights Abuses Against Immigrants Detained & Disappeared in Louisiana* (Aug. 26, 2024), https://perma.cc/TJ6M-U3KP (detailing physical and sexual assault and abusive conditions in Louisiana immigration detention centers, reported in over 6000 interviews with detained people).

water, deprivation of toilet and shower access, and record numbers of deaths.[2] Information from the CRCL documents will be used to protect children from physical harm, potentially on a class-wide basis, and inform the public on the need for systemic reform of DHS practices. Delay in releasing the documents means delay in protecting children from threats to their physical safety.

Second, Plaintiffs have shown compelling need under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 6 C.F.R. § 5.5(e)(1)(ii), which require "urgency to inform the public concerning actual or alleged Federal Government activity" and that the requester be "primarily engaged in disseminating information." *See also American Immigration Council v. DHS*, 470 F. Supp. 3d 32, 37 (D.D.C. 2020) (ordering expedited processing for documents on COVID protocols that will "help guide on-the-ground efforts that will directly impact detained immigrants" and "likely influence public discourse around ICE's handling" of the pandemic). Urgency to inform the public concerning DHS treatment of children is evident both from the severity of harm at issue and widespread public interest in the matter. For example, family separation by DHS resulted in thousands of news articles and enormous public outcry, sustained to this day.[3] Other recent examples of urgent public interest in DHS treatment of immigrant children include reporting on purported "welfare checks" on children by DHS agents that result in deportation of their guardians[4] and community opposition to arrests of high school students.[5] That DHS's improper age determination procedures have not received similar coverage is likely because it has improperly hid them from public view.

Plaintiffs Robert F. Kennedy Human Rights (RFKHR) and National Immigration Project (NIP) are organizations primarily engaged in disseminating information. A requestor need not be a member of the news media, nor solely engaged in dissemination of information, to qualify for expedited processing. *See* 6 § C.F.R. § 5.5(e)(3); *Leadership Conference on Civil Rights v. Gonzalez*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (plaintiff that "disseminates information regarding civil rights and voting rights to educate the public, promote effective civil rights laws, and ensure their enforcement" is an organization primarily engaged in disseminating information).

RFKHR's primary tool for advancing human rights is the dissemination of information through reports, convenings, educational initiatives, and media advocacy.[6] In 2024, it published a 100-page report on human rights abuses in Louisiana immigration detention widely cited by the press.[7] RFKHR also convenes an annual conference to distribute information on investing for

---

[2] *See, e.g.*, Dan Gooding, *More ICE Deaths 'Inevitable' as Detention Numbers Soar*, Newsweek (July 4, 2025), https://perma.cc/Z6MY-UMYT (reporting a surge in deaths in immigration detention in FY25); Miriam Jordan & Jazmine Ulloa, *Concerns Grow Over Dire Conditions in Immigrant Detention*, N.Y. Times (June 28, 2025), https://perma.cc/K2FW-7WRM (reporting that an 18-year-old slept head-to-toe on a concrete floor with one toilet for 35-40 men, and lost 7 pounds in 6 days).

[3] *See, e.g.*, Jordan Foster et al., *Trump's cruel immigration machine is still tearing families apart*, MSNBC (June 26, 2025), https://perma.cc/3RYX-U3NW; Marsha Griffin et al., *Family separation 2.0 compounds the trauma on children of immigrants*, L.A. Times (July 1, 2025), https://perma.cc/ZX6G-75YS.

[4] *See, e.g.*, Ximena Bustillo, *ICE officers granted access to unaccompanied minors database*, NPR (Feb. 14, 2025), https://perma.cc/XBB2-6ZXT; Patricia Caro, *Welfare checks on unaccompanied young migrants leave 100 children homeless*, El País (May 18, 2025), https://perma.cc/LC8C-HAFL; Miriam Jordan & Christina Jewett; *Checks on Migrant Children by Homeland Security Agents Stir Fear*, N.Y. Times (May 28, 2025), https://perma.cc/WM2C-AV2Y.

[5] *See, e.g.*, Nicole Acevedo, *ICE arrest of H.S. student sends shock waves through a Massachusetts town*, NBC News (June 2, 2025), https://perma.cc/9XKS-QVLK; Callie Ferguson, *A 13-year-old immigrant was arrested in Maine. It took 2 weeks to get her home.*, Bangor Daily News (July 7, 2025), https://perma.cc/EY3H-Q4Y3; Niraj Warikoo, *Detroit high school student detained by ICE pleads to halt deportation until graduation*, Detroit Free Press (June 10, 2025), https://perma.cc/YEV2-6CXP.

[6] *See* RFKHR, *Our Story*, https://perma.cc/86XG-5Y6G (last visited July 10, 2025).

[7] *See* RFKHR et al., *Inside the Black Hole*, *supra* note 1; Decl. of Anthony Enriquez, ¶¶ 6-8.

social good outcomes and creates materials for educators to distribute information on human rights to over 1.2 million students nationwide.[8] Its social media channels, including those of its President Kerry Kennedy, have more than 375,000 followers and a recent post on immigration detention has reached more than 1 million views as of last month.[9] Similarly, NIP issues policy analysis, practice advisories, and community explainers through its website and email lists. It engages with journalists and advocates to distribute information on immigration enforcement as a part of its mission of disseminating immigration-related information.[10]

Third, expedited processing is appropriate in a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv). In addition to media interest described above, questions about government integrity exist here. Subsequent to Plaintiffs' FOIA request, DHS removed CRCL records on age determinations from an online transparency library.[11] And in March 2025, DHS shuttered CRCL, claiming that it "obstructed immigration enforcement" and was "undermining DHS's mission."[12] The government's efforts to silence the office that criticized DHS coercion of immigrant children, coupled with the 6-month delay in producing documents sought here, raise questions about government integrity.

## II.   A processing rate of 3,000 documents per month is appropriate in this case.

Courts have repeatedly required DHS to process documents at a rate of 3,000 pages per month in cases involving immigration detention. *See ACLU v. ICE*, 705 F. Supp. 3d 1077, 1092 (C.D. Cal. 2023) (concerning documents on treatment of fatally ill detained people); *L.A. Times v. DHS*, 2022 WL 18932816, at *3 (C.D. Cal. Mar. 7, 2022) (concerning documents on sexual abuse of detained people). Indeed, courts have ordered even higher rates where no imminent threat to physical safety existed. *See Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 162 (S.D.N.Y. 2019) (5,000 pages per month in matter related to murdered journalist).

Defendants' proposed processing rate of 750 pages per month would not even satisfy the promptness standard applicable to a non-expedited FOIA. Their failures to respond to Plaintiffs' FOIA request or to even begin processing documents until after this litigation was commenced demonstrate, at best, a lack of diligence, if not an "uncooperative stance." *Bloomberg v. FDA*, 500 F. Supp. 2d 371, 376.[13] Additionally, Defendants have not yet identified or even started searches for documents responsive to the fourth item in Plaintiffs' request. Review of the CRCL documents will permit the parties to formulate reasonable searches for those documents or potentially even narrow that request, providing further support for a substantially faster processing rate than 750 pages per month.

---

[8] RFKHR, *2025 RFK Compass Summer Investors Conference*, https://perma.cc/A3PH-BG96 (last visited July 10, 2025); RFKHR, *Educators*, https://perma.cc/GHQ3-NGRG (last visited July 10, 2025).
[9] Decl. of Anthony Enriquez, ¶¶ 10-11.
[10] Nat'l Imm. Project, *Resources,* https://perma.cc/6CUA-JUC7 (last visited July 10, 2025).
[11] *See* Nick Schwellenbach, *DHS Removed 100+ Civil Rights and Civil Liberties Records*, Project on Gov't Accountability (Apr. 21, 2025), https://perma.cc/NWP7-SBD3.
[12] *See* Zolan Kanno-Youngs et al., *Trump Shuts Down 3 Watchdog Agencies Overseeing Immigration Crackdown*, N.Y. Times (Mar. 21, 2025), https://perma.cc/F4SP-8Q2Y. In separate litigation on the shutdown of CRCL and other DHS oversight offices, DHS contends that the offices were not eliminated, but are merely being reorganized. *Robert F. Kennedy Human Rights et al. v. U.S. Dep't of Homeland Sec. et al.*, 1:25-cv-01270 (D.D.C. filed Apr. 24, 2025).
[13] Plaintiffs note that since commencing this litigation, counsel for the government has been cooperative and constructive in working with Plaintiffs' counsel, including in development of protocols for identifying responsive documents responsive. The rate of processing is the only issue as to which we have thus far not been able to agree.

Respectfully,


Anthony Enriquez
Robert F. Kennedy Human Rights

By:   */s/ Anthony Enriquez*

ANTHONY ENRIQUEZ
Vice President, U.S. Advocacy and Litigation
Robert F. Kennedy Human Rights
88 Pine Street, Suite 801
New York, NY 10005
*Counsel for Plaintiffs*

cc (via ECF):  Counsel for Defendants