

July 15, 2025

**VIA ECF**
Honorable Arun Subramanian
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Robert F. Kennedy Human Rights et al v. U.S. Dep't of Homeland Security et al.*,
       25 Civ. 4349 (AS)

Dear Judge Subramanian:

As the cases Defendants cite make clear, it is the government's burden to show "credible evidence that disclosure within such time period as requested by plaintiff is truly not practicable." *Documented NY v. United States Dep't of State*, 2021 WL 4226239, at *2 (S.D.N.Y. Sept. 16, 2021) (citation modified). Its declarant declines to provide information sufficient to meet that burden. *See Brennan Ctr. for Just. at New York Univ. Sch. of L. v. United States Dep't of State*, 300 F. Supp. 3d 540, 549-50 (S.D.N.Y. 2018) (presumption of agency delay not rebutted by "vague assertions" that are "unsupported by credible evidence").

**I.     The government's unexplained delay suggests bad faith.**

According to the government, the documents at issue here have sat untouched since they were identified as potentially responsive by CRCL staff sometime prior to March 21, 2025—when the government ordered CRCL staff to immediately stop all work and then fired them. Pavlik-Keenan Decl. ¶¶ 11, 18, ECF No. 42. In the intervening four months, the government has apparently done nothing at all to complete the processing that CRCL began.

The government blames its delay on efforts to "streamline FOIA activities" within the Department of Homeland Security (DHS) that caused "significant challenges with completing FOIA tasks on behalf of DHS-CRCL." *Id.* ¶¶ 11-12. This is nonsensical. To streamline an activity means to make it "simpler or more efficient," not to delay its completion.[1] The 119 cases referred from CRCL to DHS—.01% of the total FY25 DHS FOIA workload—would have been processed far more quickly had they remained with CRCL. *See Brennan Ctr.*, 300 F. Supp. 3d at 549 ("Defendant cannot evade responsibility for failing to produce the requested records by referring the request to DHS"). And the 797 other cases absorbed by DHS—alongside an unknown number of additional detailee staff to assist with processing—are less than 0.8% of its FOIA workload. *Id.* ¶¶ 13-14. Something other than referral of cases to DHS is the source of delay here.

The simplest explanation is the most plausible: when the government attempted to shut down CRCL and other DHS oversight agencies it had described as "internal adversaries," it either

---

[1] *Streamline*, Merriam-Webster, https://www.merriam-webster.com/dictionary/streamline (last visited July 15, 2025).

failed to plan for carrying out their FOIA obligations or intentionally abandoned them.[2] In either scenario, this is not a case where an event beyond the government's control, like a pandemic, has produced justifiable resource constraints. *See Documented NY,* 2021 WL 4226239, at \*3-\*4. To the contrary: this is a case where the government claims that its mass firing of civil rights oversight officers excuses it entirely from complying with FOIA's promptness requirements. The Court should not countenance such a flagrant effort to undermine FOIA's transparency objectives.

## II. Unsupported claims of impracticability fail to meet the government's burden.

One can sympathize with career public servants assigned the unenviable task of repairing what government leadership has moved fast to break and still legitimately question the lack of detail in the government's declaration here. The six full-time analysts on the DHS litigation team can process 10,500 documents per month. Pavlik-Keenan Decl. ¶ 16. But there is no suggestion that the 32 other full-time analysts are prohibited from working on Plaintiffs' request. If they can process at the same rate, DHS capacity jumps to 66,500 pages a month. And how many part-time, detailee, or contractor FOIA analysts are or will be soon available, in addition to the six the government is currently acquiring? *Id.* ¶ 17. How long does the government reasonably estimate it needs to continue "exploring options to increase FOIA processing capacity"? *Id.* Its declarant gives no hint, but the backlog of FOIA requests makes clear that increasing processing capacity is not a DHS priority. Presumably, the government would have this Court simply credit its unsupported assertion that it needs the full 15 months it demands to process Plaintiffs' request (excluding additional time for disputes over redactions).

In the same vein, knowing that a queue of over 42,000 FOIA requests exists today fails to show this Court credible evidence of the impracticability of processing Plaintiffs' request at their proposed rate. The government says nothing about how much time it reasonably estimates it needs to clear the queue. *Id.* ¶ 14. How many of the pending requests are part of the narrower set that qualify for expedited processing, like the one at issue here? Has the rate of new FOIA requests in FY25 steadily decreased, allowing the government to increase processing capacity? Are the vast majority of pending requests simple matters that can be quickly processed?

Plaintiffs also dispute the government's ipse dixit characterization of the FOIA request at issue here as "complex," based solely on vague allusions to "factors such as the various types of records and the number of responsive records." *Id.* ¶ 16. What "types of records" and how many pages make this request complex? According to CRCL, the records here are investigations of 18 complaints containing "similar allegations, such as [Customs and Border Protection officers] discarding and destroying birth certificates, pressuring and coercing [unaccompanied immigration children] into incorrectly claiming they are adults, and falsifying records of [their] ages." Complaint, ECF No. 1, Exh. 1 (quoting the CRCL investigation retention memo). This Court can reasonably conclude that standardized investigatory files analyzing factually similar allegations can be efficiently processed.

Ultimately, the government objects that having reduced its FOIA resources, it may be required to "redirect" its remaining resources to process Plaintiffs' urgent FOIA request in a timely fashion. Pavlik-Keenan Decl. ¶ 19. But that is precisely what Congress intended when it created expedited processing. The Court should order the government to comply with the FOIA statute and order processing of 3000 pages per month.

---

[2] Zolan Kanno-Youngs et al., *Trump Shuts Down 3 Watchdog Agencies Overseeing Immigration Crackdown*, NY Times, Mar. 21, 2025, https://perma.cc/DA5R-YU34.

Respectfully,

Anthony Enriquez
Robert F. Kennedy Human Rights

By: */s/ Anthony Enriquez*

ANTHONY ENRIQUEZ
Vice President, U.S. Advocacy and Litigation
Robert F. Kennedy Human Rights
88 Pine Street, Suite 801
New York, NY 10005
*Counsel for Plaintiffs*

cc (via ECF):  Counsel for Defendants