UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; NATIONAL IMMIGRATION PROJECT; and AMERICAN CIVIL LIBERTIES UNION OF LOUISIANA;<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; et al.<br><br>*Defendants*. | Civil Action No. 25-cv-4349 (AS)<br><br>**DECLARATION OF CATRINA PAVLIK- KEENAN** |

## <u>DECLARATION OF CATRINA M. PAVLIK-KEENAN</u>

### I.    <u>Introduction</u>

I, Catrina M. Pavlik-Keenan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I am the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Department of Homeland Security ("DHS") Headquarters Privacy Office ("Privacy Office" or "DHS PRIV").

2.    In this capacity, I am the DHS official responsible for implementing FOIA policy across DHS and responding to requests for records under FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions. I have been employed by DHS PRIV in this capacity since July 4, 2021. Prior to holding this position, I was the United States Immigration and Customs Enforcement FOIA Officer from December 18, 2006, until July 3, 2021. Prior to holding that position, I worked for approximately four years in the FOIA office at the Transportation Security Administration ("TSA"), first as a Supervisory FOIA Analyst, then as Deputy Director for two years, and finally as Director.  Prior to working at TSA, I worked for approximately nine years as a

FOIA Analyst at the Department of Transportation, holding positions at the Federal Highway Administration, Office of Pipeline Safety, and Office of the Secretary from 1993 to 2002. In total, I have 30 years of experience processing FOIA requests and working on FOIA issues.

3. The Privacy Office oversees the management, sharing, protection, and disclosure of DHS data and information in accordance with law, policy, and standards. The Privacy Office also implements the Freedom of Information Act ("FOIA") at DHS and also provides oversight of DHS components in implementing the legal and regulatory requirements under the FOIA.[1] As the Deputy Chief FOIA Officer, I receive regular briefings on FOIA staffing levels, workload, backlogs, litigation demands, and I am involved in decisions regarding FOIA resource allocation and prioritization. As a result, I am familiar with the day-to-day operations and litigation and workload of the FOIA operations in the Privacy Office, hereinafter "DHS-FOIA."

4. I make this declaration in support of DHS's opposition to Plaintiff's motion to compel production during the current lapse in appropriations and in support of DHS's motion for a stay during the lapse. I am familiar with DHS's FOIA operations and with the impact of the current lapse in appropriations on those operations. During the lapse in appropriations, I am excepted from furlough in my role as Deputy Chief FOIA Officer for the Department. My functions during the lapse are limited to high-level oversight, including government oversight of contractor activities and response to critical taskings,

---

[1] Section 5.1(c) of DHS's FOIA regulations provides that "DHS has a decentralized system for processing FOIA requests, with each component handling requests for its records." 6 C.F.R. § 5.1(c). Accordingly, and except for the Cybersecurity and Infrastructure Security Agency ("CISA"), DHS-FOIA does not respond to or process FOIA requests on behalf of other operational DHS components. DHS-FOIA receives and processes FOIA requests for the following Department of Homeland Security Headquarter ("DHS-HQ") Offices: Office of the Executive Secretary, Management Directorate, Office of Strategy, Policy, and Plans, Office of Operations Coordination, Office of Partnership and Engagement, Privacy Office, Civil Rights and Civil Liberties ("CRCL"), Center for Prevention Programs and Partnerships, Office of the General Counsel, Office of Legislative Affairs, Office of Public Affairs, Office of the Citizenship and Immigration Services Ombudsman, Office of the Immigration Detention Ombudsman, Office of the Secretary, Office of Biometric Identity Management ("OBIM"), Federal Protection Service ("FPS"), and the Office of Intelligence and Analysis ("I&A"). Additionally, as indicated above, DHS-FOIA, in accordance with an internal agreement, receives and processes FOIA requests for operational component Cybersecurity and Infrastructure Security Agency ("CISA").

which may include responding to court-ordered deadlines. I typically do not perform FOIA processing or FOIA litigation work myself. I am providing this declaration because I am the appropriate official available to explain DHS FOIA's status and operations during the lapse in appropriations.  However, with the exception of a few contractors, the DHS-FOIA's staff, which is comprised of federal employees who would ordinarily process FOIA requests subject to FOIA litigation, is currently in furlough status.

5.    The statements in this declaration are based on my personal knowledge, my review of records maintained in the ordinary course of DHS business, and information provided to me in the course of my official duties by personnel within the DHS-FOIA and others at the Department with relevant knowledge.

## II.    DHS FOIA's Operations Under Normal Appropriations

6.    DHS-FOIA is responsible for receiving, tasking, and processing FOIA requests directed to DHS Headquarters, coordinating searches with Headquarters offices as noted above, reviewing records for responsiveness, applying FOIA exemptions, and issuing responses.

7.    When DHS-FOIA receives a proper FOIA request, it assigns the request to a case management system, identifies the DHS program office(s) that reasonably is likely to maintain responsive records, and issues taskings to those program offices. Program offices then identify custodians and systems, conduct searches, and return potentially responsive records.  In addition, DHS-FOIA often provides a search tasker to its Office of Chief Information Office ("OCIO") to conduct a backend search of emails and other records based on search terms, time frames, and specified custodians.

8.    In FOIA litigation, DHS-FOIA is the primary operational client that supports DHS counsel representing the agency in FOIA lawsuits. Currently, DHS-FOIA's litigation team includes five full-time federal employees and four contractors who help process records for cases in litigation, including coordinating litigation consultations with other agencies and making releases to plaintiffs; in addition, these employees coordinate FOIA

appeals for DHS Headquarters and are also responsible for providing training, handling proactive disclosures to DHS's FOIA reading room, and other assigned special projects. With regard to processing records, on average, each analyst of the DHS-FOIA litigation team processes approximately 2,500 pages per month across all of the FOIA litigation cases with active productions.

9.    This DHS-FOIA staff also help support DHS counsel in tasking OCIO and DHS program offices to conduct searches, collect and process records, and provide factual information necessary for sworn declarations and *Vaughn* indices. Without the DHS-FOIA litigation team, DHS counsel cannot adequately represent the agency in FOIA litigation because factual information relating to the agency's obligation under the FOIA to conduct a reasonable search and applying appropriate FOIA exemptions would not be available.

10. Although DHS-FOIA employs contractors in support of its FOIA litigation matters, and those contractors are working during the lapse since they are funded by pre-existing contracts with previously allocated funds, they are only able to process records they have already collected prior to the lapse, and cannot make any releases in litigation because the federal employees that make final decisions about and approve the release of these records are furloughed.   Moreover, the Antideficiency Act prohibits me from reviewing and approving these proposed releases because FOIA work is not: funded by sources other than annual appropriations; not authorized to continue without appropriations; not implied by law as necessary to continue even without funding; not necessary to the discharge of presidential duties and powers; not for the protection of life and property; or not excepted in the event of an incident or credible threat. 31 U.S.C. §§ 1341, 1342.

### III.    Lapse in Appropriations and Furlough of the DHS-FOIA staff

11. Just after midnight on February 14, 2026, DHS experienced a lapse in appropriations affecting DHS. In connection with this lapse, DHS implemented its

4

contingency (shutdown) plan consistent with applicable law, including the Antideficiency Act.

12. Consistent with DHS procedures for lapses in appropriations, certain DHS activities are treated as "excepted" and therefore authorized to continue during the lapse in appropriations, while other activities are treated as "non-excepted" and therefore must cease during the lapse and associated employees are placed in furlough status.

13.  For the purposes of this lapse in appropriations, the DHS FOIA operations have been treated as a non-excepted function, and all DHS PRIV employees were furloughed effective at midnight on Saturday, February 14, 2026, except for DHS Privacy Office Leadership, including myself, the Chief Privacy/Chief FOIA Officer, the Deputy Chief Privacy Officer, and the DHS Privacy Officer Chief of Staff.  As furloughed employees, they are not authorized under applicable lapse-in-appropriations guidance and the Antideficiency Act to perform work on FOIA matters, including both administrative processing and FOIA-related litigation support.

14. Accordingly, absent limited work that can be completed by contractors as stated above, DHS cannot respond to new or pending FOIA requests; conduct or oversee searches for responsive records; coordinate with operational program offices' FOIA points of contact; review records for responsiveness and applicable exemptions; make release determinations; nor prepare and issue productions.

**IV.    DHS Production Released during Orderly Suspension of Operations**

15. As is the case with any furlough, federal employees such as employees in DHS-FOIA are allowed four (4) hours of work to participate in the orderly suspension of operations.  On February 17, 2026 at 10:24 a.m.,[2] DHS-FOIA made an interim release explaining that DHS-FOIA had reviewed 442 pages, and provided sixty-eight (68) pages

---

[2] Due to the size of the release, the Office of General Counsel had to facilitate resending the release the following day given that the DHS-FOIA federal employees were on furlough. See Emails from Peter Aronoff, Department of Justice, to Plaintiffs (Feb. 18, 2026 at 12:19 p.m. ET)(on file with Plaintiff and author).

that were returned from other agencies after consultation. DHS-FOIA withheld in part one hundred-fifty (150) pages and released in full sixty-six (66) pages. DHS-FOIA reported to the Plaintiffs that two hundred and five (205) pages were duplicates, fifty (50) pages were nonresponsive, and thirty-nine (39) pages required further consultation within DHS or with other government agencies. DHS also explained that it will release any responsive non-exempt material when these pages are returned from consultation.

16. This release occurred during the orderly suspension of operations because the documents had already been processed the week prior by DHS-FOIA federal employees. The DHS-FOIA employees undertook *de minimis* effort to make this release during this four (4) hour period.

## V.    Impact on FOIA Processing and FOIA Litigation

17. Because all DHS-FOIA staff is furloughed, except for DHS Leadership, and in order to comply with the Antideficiency Act, DHS is not currently processing FOIA requests in the ordinary course, including the FOIA request(s) at issue in this case, and cannot take the steps necessary to search for, review, and produce records responsive to that request or to provide FOIA processing support needed to advance this litigation.

18. FOIA litigation depends on DHS-FOIA to provide the factual foundation for the government's litigation positions.  In particular, DHS litigation counsel rely on DHS-FOIA to (a) identify and coordinate searches of custodians and systems reasonably likely to contain responsive records; (b) task the appropriate program offices or OCIO to search for potentially responsive records; (c) collect, organize, and track potentially responsive records; (d) review records and apply FOIA exemptions, and (e) provide factual information for sworn declarations and *Vaughn* indices explaining searches, processing, and withholdings.

19. As a result, during the lapse in appropriations, DHS lacks both the legal authority and the practical ability, through DHS-FOIA, to adequately respond to FOIA requests during the administrative phase.

20. Based on information provided to me in the course of my official duties, I understand that certain work performed by DHS's Office of the General Counsel ("OGC") has been classified as exempt or excepted under DHS procedures for lapses in appropriations and the Antideficiency Act. In general, exempt functions are funded by appropriations that have not lapsed, such as multi-year or permanent appropriations, including expenditures under the One Beautiful Bill Act, and excepted activities that are limited to those necessary for the safety of human life or the protection of property. FOIA litigation work performed by DHS OGC counsel has generally been limited to coordinate with the U.S. Department of Justice on reporting DHS's status to the court and, if necessary, request a motion to stay FOIA cases until funding is restored. In any event, DHS OGC cannot substantively advance FOIA litigation without the FOIA searches, processing, and factual support that DHS-FOIA would ordinarily provide.

## VI.    Resumption of FOIA Operations

21. Once appropriations are restored and the lapse in appropriations ends, DHS will recall DHS-FOIA staff to duty consistent with applicable law and guidance.

22. Until that occurs, for the reasons described above, DHS cannot participate in FOIA processing or FOIA litigation in this case during the lapse in appropriations, and a stay of production deadlines until funding is restored is necessary to allow DHS to comply with both the Antideficiency Act and its FOIA obligations.

## VII.    U.S. Customs and Border Protection FOIA Release

23. I understand that U.S. Customs and Border Protection (CBP), a component of the Department, issued a letter in this case to the plaintiffs dated March 3 indicating that "CBP FOIA reviewed 1080 pages of records and made the following determination: a. 1080 pages of records are determined to be Non-Responsive or Duplicate pages," and that no records were released to plaintiffs at that time.

24. As I understand it, CBP FOIA staff performed certain work in the first several weeks of the current lapse of appropriations, including reviewing and processing records. However, following consultation with DHS Headquarters about FOIA operations during a lapse in appropriations, CBP's FOIA Division (within CBP's Privacy, FOIA, and EEO Office) (PFE) has determined that it can no longer work on FOIA matters, including but not limited to processing FOIA requests or issuing FOIA productions until the lapse of appropriations has ended.  CBP will seek stays or extensions of its court-ordered deadlines as necessary. Thus, CBP has determined that going forward, CBP will work with the Department of Justice to move for a stay or extension of the Court's production order in this case.

Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare the foregoing is true and correct to the best of my knowledge and belief

Dated the 23rd day of March 2026.

Catrina Pavlik-Keenan
Deputy Chief FOIA Officer
U.S. Department of Homeland Security

8